665 P.2d 1063

**Josef MUNCH, Plaintiff-Appellant,**

v.

**BOARD OF CORRECTION, STATE OF IDAHO, Don R. Erickson, Director, Defendant-Respondent.**

No. 13802.

Supreme Court of Idaho.

June 29, 1983.

Scott Burnum, Boise, for plaintiff-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Alan D. Cameron (argued), of Manweiler, Bevis and Cameron, and of Clemons, Cosho and Humphrey, Boise, for defendant-respondent.

BISTLINE, Justice.

Josef Munch's termination from his position as Chief of Security of the Idaho Correctional Facility on February 4, 1978, is the basis of the controversy which has progressed in this Court. It arose as follows.

On December 7, 1977, Mr. Munch was questioned by Warden R.L. Anderson concerning an alleged falsification of an inmate's pass. Following the discussion, Mr. Munch was placed on administrative leave, during which period Mr. Munch discussed with the news media his version of the reasons causing the difficulty.

On December 9, 1977, the first of a series of articles appeared in the Idaho Statesman. The articles were based primarily on interviews with Mr. Munch and addressed allegations that: administrators of the Department of Corrections utilized improper personnel policies and procedures regarding hiring, promoting, retaining and dismissing employees—resulting in an unreasonably high rate of employee turnover; that the Idaho Board of Corrections relied too heavily on the information provided it by the department director; that department funds were used for purposes other than those reflected in the budget and were shifted between programs in violation of Idaho law; and that inmates were maltreated.

The Idaho Board of Corrections conducted hearings on December 16, 1977, and January 9, 1978, to address these allegations. The Board thereafter submitted to Governor John Evans a report of its findings, which confirmed many of Mr. Munch's allegations but recommended he be dismissed "under provisions of Idaho Code 67–5309(n)5 [1] for conduct detrimental to the good order and discipline in the Idaho Penitentiary." [2] R., p. 13. On the same day that the report was submitted, Mr. Munch was telephoned at his home by the Director of Corrections, Donald R. Erickson, and informed of his dismissal.

Mr. Munch appealed his termination to the Idaho Personnel Commission, which appointed Paul Boyd as hearing officer. Following four days of testimony, Mr. Boyd filed Findings of Fact, Conclusions of Law and an Order affirming Mr. Munch's dismissal.

Mr. Boyd upheld Mr. Munch's dismissal on the basis that he made the following false and inaccurate statements either knowingly or with reckless disregard for their truth or falsity: that various members of the prison administration were guilty of "shoveling" money; that the Idaho Personnel Commission was "in the pocket" of the

---

1. I.C. § 67–5309 provides:

    "The commission shall have the power and authority to adopt, amend, or rescind such rules and regulations as may be necessary for proper administration of this act. Such rules shall include:

    . . . .

    "(n) A rule for the discharge or reduction of rank or grade or disciplining of permanent employees only for cause with reasons given in writing. Such rule shall provide that any of the following reasons *shall* be proper cause for the discharge, reduction of rank or grade, or suspension of any employee in the state classified service:

    . . . .

    "5. Insubordination or conduct unbecoming a state employee or conduct detrimental to good order and discipline in his department."

2. In its report, the Board stated that:

    "Captain Munch did not utilize established grievance procedures but chose to utilize the news media to air his complaints. This action has not served the best interests of the Idaho Correctional System and its employees. An institution such as the prison which requires a high degree of discipline in its staff simply cannot afford to permit any employee to challenge publicly every decision and the entire philosophy of operation. To do so would result in utter chaos, and those who choose this route *before* exercising their guaranteed grievance rights under the Idaho statutes must be dealt with firmly." R., p. 13.

Warden; that the Board of Corrections was "in the pocket" of the Director of Corrections; that Warden Anderson had ordered him to grant a six hour pass to a named inmate; that he was threatened by certain members of the Board of Corrections; that he had been Deputy Warden for twelve years; and that he had been placed on administrative leave because he refused to issue a Christmas pass to a convicted murderer. Mr. Boyd found that there was a large and significant statewide public reaction to these statements and that the statements could do nothing but bring the institution and its principal officers into public disrepute. He further found that Mr. Munch had been guilty of insubordination and conducting himself in a manner unbecoming an employee of the State of Idaho in violation of Idaho Personnel Commission Rule 19–3.1(e).[3]

The Personnel Commission affirmed and adopted Mr. Boyd's Findings of Fact, Conclusions of Law and Order,[4] following which Mr. Munch appealed to the Fourth District Court, which upheld the Personnel Commission decision on the basis that "[t]he hearing officer's findings that the appellant

made false and inaccurate statements knowing them to be such, to the news media, is based on substantial competent evidence in the record. As a matter of law, such findings support the Decision and Order entered by the Commission."

The primary issues on appeal are whether there is substantial evidence in the record to support the findings of the hearing officer which were in turn approved and adopted by the Commission, and whether the findings support Mr. Munch's dismissal as a matter of law.

■ The United States Supreme Court in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), held that the first amendment protects a public employee from being dismissed for speaking on issues of public importance. However, the Supreme Court held that speech which is knowingly false or is made with reckless disregard for the statement's truth or falsity is not constitutionally protected. *Id.* Thus, under the *Pickering* analysis, a public employee may properly be dismissed for making knowingly false statements or with reckless disregard for their truth or falsity.[5]

---

3. This rule now appears as Rule 19.C.1.e. and provides that:

"19.C.1 Any employee in the state classified service may be dismissed or suspended or otherwise disciplined for any of the following causes which occur during the period of the employee's employment:

. . . .

"19.C.1.e. Insubordination or conduct unbecoming a state employee or conduct detrimental to good order and discipline in the department."

4. The Commission upheld the dismissal on the further grounds that:

[E]ach of the following grounds for dismissal was proven by substantial competent evidence:

"Mr. Munch falsified various inmates' records . . . .

"[T]he threats Mr. Munch made on the lives of Warden Anderson and Director Erickson, while armed with a loaded weapon, coupled with the evidenced intent to carry them out, is conduct unbecoming a state employee and detrimental to the good order and discipline of the department. . . .

. . . .

"... Mr. Munch, if he had knowledge of the types of irregularities he publicly proclaimed, had a duty and obligation to make such irregularities known through any legal means, at the time they came to his knowledge. The fact is that he did not disclose them until after he had been confronted with the possibility of discipline arising from the falsification of inmate records. His belated disclosure of the problems at the Institution was motivated by a desire to retain his job. Such failure to come forward until his own position was in peril does not constitute a valid defense to his discharge."

5. In *Pickering,* the Supreme Court did not decide the question of whether false statements knowingly or recklessly made would, if they were neither shown nor reasonably presumed to have had any harmful effects, still be protected by the First Amendment. 391 U.S. at 574 n. 6, 88 S.Ct. at 1738 n. 6. We similarly do not need to address this issue at this time. The Personnel Commission made findings, which we hold to be supported by substantial evidence, that:

"There was a large and significant statewide public reaction to the statements and allegations made by appellant and reported by the media.

■ Having made a thorough review of the record before the Personnel Commission, we hold that there is substantial evidence to support its findings that Mr. Munch made the aforementioned false statements either knowingly or with reckless disregard for their truth or falsity, and that these statements could do nothing but bring the correctional facility into disrepute. However, this does not end our analysis since a public employee's dismissal may not be upheld merely because he made such statements, if those statements were not the basis for his dismissal.

In *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court examined a case in which a teacher was not rehired after conducting himself and making statements in a manner not protected by the first amendment. However, prior to the school board's decision not to rehire him, the teacher had also made statements which were constitutionally protected under the *Pickering* analysis.[6] In that case the Court held that a public employee may establish a claim for reinstatement if the decision not to rehire was made "by reason of his exercise of constitutionally protected First Amendment freedoms." *Id.* at 283–84, 97 S.Ct. at 574. The Court held that even in cases in which the employee had made statements which could constitutionally form the basis for his dismissal, where the employee had also made constitutionally protected statements his dismissal would be improper if the dismissal was *motivated* by his making constitutionally protected statements. The Supreme Court set forth an "even if" test—would the employee have been fired even if he had not made the constitutionally protected statements?[7] The Court held that the burden is initially on the employee to establish that the protected speech is a "motivating factor" in an employment decision. However, once the employee carries this burden, the burden shifts to the employer to show by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. *Id.* at 287, 97 S.Ct. at 576.

■ The record reflects that Mr. Munch made allegations about the correctional system which may have been constitutionally protected under the *Pickering* analysis, set forth at note 6, *supra.* However, the Personnel Commission and the district court

---

. . . .

"The statements made by appellant could tend to do nothing but bring the institution and its principal officers into public disrepute and to bring about an improper and false impression of the administration of the Idaho State Correctional Institution."

6. In *Pickering* the Supreme Court balanced the interest of "the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees" in determining whether substantially correct statements made by a public employee were constitutionally protected under the First Amendment and so could not form the basis for his dismissal. 391 U.S. at 568, 88 S.Ct. at 1734–35. The Court examined the following factors in balancing these interests: (1) Were the statements directed toward any person with whom the employee is in daily contact; (2) is there a question presented of maintaining either discipline by immediate superiors or harmony among co-workers; (3) would the allegations impede the proper performance of the employee's daily duties or interfere with the regular operation of the schools generally; (4) is the issue addressed a matter of legitimate public concern on which free and open debate is vital; and (5) were the matters addressed so closely related to the day-to-day operations of the schools that any harmful impact on the public would be difficult to counter because of the employer's presumed greater access to the facts.

7. The Court stated:

"The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct. A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision."

429 U.S. at 285–86, 97 S.Ct. at 575.

made findings only with respect to those false statements made by Mr. Munch knowingly or with reckless disregard for their truth or falsity, which statements were not constitutionally protected. Neither the Personnel Commission nor the district court made any determination whether other statements made by Mr. Munch were constitutionally protected under the *Pickering* analysis or whether, if protected, they were a "motivating factor" behind his dismissal. While ordinarily we would be required to remand this case to the Personnel Commission for such determinations to be made, here, even if we assume that Mr. Munch satisfied his initial burden of demonstrating that any constitutionally protected statements he might have made were a "motivating factor" behind his dismissal, the evidence set forth *supra* demonstrates, as a matter of law, that the Board of Corrections satisfied its resulting burden of demonstrating by a preponderance of the evidence that Mr. Munch would have been fired "even if" he had not made such constitutionally protected statements. *See Mt. Healthy City School District v. Doyle, supra,* 429 U.S. at 283–84, 97 S.Ct. at 574. Any finding to the contrary made by the Commission would not be supported by substantial and competent evidence. Therefore, we hold that the courts and tribunals below committed no error in ruling that Mr. Munch was properly dismissed for making false statements knowingly or with reckless disregard for their truth or falsity, which statements could do nothing but bring the institution and its principal officers into disrepute.

For the foregoing reasons, the district court decision is hereby

*Affirmed.* Costs to respondent.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

SHEPARD, J., concurs in the result.