903 P.2d 135

**Jerry LOCKHART, Appellant–**
**Appellant on Appeal,**

v.

**STATE of Idaho, DEPARTMENT OF**
**FISH AND GAME, Respondent.**

No. 21544.

Court of Appeals of Idaho.

Sept. 7, 1995.

548

Evans, Keane, Boise, for appellant. Larry D. Ripley, argued.

Alan G. Lance, Attorney General; W. Dallas Burkhalter, Deputy Attorney General, argued, Boise, for respondent.

WALTERS, Chief Judge.

This is a continuation of an employer's disciplinary action earlier addressed in part by our Supreme Court in *Lockhart v. Department of Fish and Game,* 121 Idaho 894, 828 P.2d 1299 (1992). In the previous case, the Court remanded the action for further proceedings. The employee, Jerry Lockhart, now seeks appellate review of the decision by the district court after the remand, which affirmed the Personnel Commission's reinstatement of disciplinary actions taken against Lockhart by his employer, the Idaho Department of Fish and Game. The Department identified a number of reasons for the disciplinary measures; however, Lockhart argues that the sole reason for the disciplinary action was a derogatory comment he made about certain female legislators during a meeting with a female legislator.

On appeal, Lockhart argues that the Department violated his First Amendment right to free speech and his statutory rights to express an opinion on political subjects and candidates and to participate fully in public affairs pursuant to I.C. § 67–5311(2)(b). He further contends that determinations by the Personnel Commission hearing officer with respect to witness credibility were improperly disregarded by the Commission. For the reasons explained herein, we affirm the district court's order upholding the Commission's decision.

## FACTS AND PROCEDURAL BACKGROUND

In a letter dated February 10, 1989, the Director of the Department of Fish and Game, Jerry Conley, terminated Lockhart's employment. In his letter, Conley explained that in the past several years, the Department had expressed concern on numerous occasions regarding Lockhart's inability to "deal effectively with the public," and his conduct as a Department supervisor and employee, and stated that Lockhart's conduct with co-workers had "deteriorated again to

the point that cordial working relationships [were] impossible." The letter also mentioned specific instances of misconduct. These included an outburst in front of subordinate officers in which Lockhart "verbally threatened a non-present staff employee in vulgar terms," berating a subordinate employee when others were present, ridiculing supervisors and managers "in explicit and unsavory language" before his co-employees at a November 1988 meeting, and verbally abusing a subordinate employee "in such an uncontrolled and loud manner that the outburst was heard by other staff members in adjacent offices." Also at issue was the fact that Lockhart had engaged in outside paid-employment with the McCall police department in violation of Department policy.

Conley further noted that in 1987, Lockhart had been placed on "needs improvement" status with the understanding that improvements would be made. The letter stated that although in the following six months, Lockhart showed improvement to the extent that he was awarded a short-term merit pay increase which became permanent in December 1988, Lockhart's "conduct and supervisory demeanor over the past several weeks demonstrated that Lockhart had "regressed to [his] former behavior which is unacceptable."

Lockhart filed a grievance and, on March 13, 1989, the grievance panel recommended, in lieu of termination, that Lockhart be suspended for fifteen days, and that he be transferred to a non-supervisory position and relocated. Conley then rescinded the termination and implemented the panel's recommendations.

Lockhart appealed the disciplinary measures to the Idaho Personnel Commission. After an extensive proceeding conducted by an administrative hearing officer appointed by the Commission, the hearing officer affirmed the fifteen-day suspension but reversed the remaining adverse action against Lockhart and ordered that Lockhart be reinstated to his prior position.

At the hearing, there was testimony regarding Lockhart's outside employment with the McCall police department. The hearing also revealed that on January 3, 1989, a meeting was held between Lockhart and another Department officer and a newly elected female legislator to discuss Department matters and to foster improved relations between the Department and the legislature. At the conclusion of the meeting, Lockhart made a comment to the effect that many of Idaho's female legislators were "airheads," or had "nothing between their ears." The legislator testified that she regarded the remark as "inappropriate considering the issues discussed." When contacted by Ken Norrie, Department Assistant Director, the legislator informed him that she "was unhappy that these kind of comments would be made by an officer." The legislator also testified that although she did not want "a mountain made out of a molehill," she believed that Lockhart should not have made such comments, "particularly under professional circumstances, which was Fish and Game issues."

The legislator understood that Lockhart was representing the Department at the meeting and stated that the comment was not made in a context in which the Department employees were representing their own personal political views. Additionally, the legislator testified that she had mentioned the comment to other legislators. She stated that although she was not personally offended because she had not served in the legislature prior to the comment, she knew a female legislator who was offended upon learning about Lockhart's derogatory reference to members of the legislature.

Conley testified that he first learned of Lockhart's comment when he was subsequently approached at a meeting by a male legislator who, in the presence of three or four other legislators, told him, "Well, I want to tell you that I'm really upset about your conservation officers in general, and you've got an officer in the outfit that thinks that all female legislators are nothing but air-heads." Conley also testified that several other legislators made comments indicating their belief that Lockhart typified Idaho's conservation officers. Conley stated that the legislators' attitudes were very disturbing in light of the special effort the Department had made to improve the Department's image and show that the officers were "conscientious folks."

Conley further testified that Lockhart's comment to the legislator was not a major reason for the discipline, but was only one in a series of incidents, and that by itself, the statement would have resulted only in a letter of reprimand. Jerry Mallet, Chief of Field Operations for the Department, identified five reasons for Lockhart's original termination: (1) continued public complaints; (2) serious problems supervising subordinates; (3) insubordination toward supervisors; (4) failure to get along with fellow workers; and (5) violation of policies prohibiting outside employment. Stacy Gebhards, Regional Supervisor for the Department, identified the same five reasons for Lockhart's termination and said that any one of the grounds would have been reason to consider disciplinary action. Other Department officers testified similarly with respect to Lockhart's behavior.

The administrative hearing officer found that Lockhart's participation in outside employment without authorization and making improper comments regarding female legislators was "conduct detrimental to good order and discipline in the [D]epartment," for which suspension was justified. However, the hearing officer further concluded that the following findings by the grievance panel were not supported by substantial and competent evidence: (1) the adverse determination arising from a complaint by a Mrs. Bratcher; (2) that Lockhart "failed to adequately perform his duties and responsibilities as a supervisor and as a representative of the [D]epartment;" and (3) that Lockhart was "repeatedly and openly critical of his superiors and ... was [in] continual conflict with peers, subordinates, supervisors and the public."

The Department appealed to the Commission from the hearing officer's determination. Following a review hearing, the Commission issued a decision affirming Lockhart's suspension but reversing the remainder of the hearing officer's order and reinstating the disciplinary measures imposed by the Department. The Commission concluded that the hearing officer's findings that there was cause for discipline based on Lockhart's employment with the McCall police department

and the comment regarding female legislators was "amply supported by the record."

The Commission also reviewed the bases for discipline which the hearing officer decided were not supported by the evidence, and reversed the hearing officer's findings. With respect to these incidents, the Commission made the following findings.

*(a) The Bratcher complaint.*

The Bratcher complaint was initiated by a telephone call, followed by a handwritten letter, from Kathy Bratcher to Mike Schlegle, the Regional Wildlife Manager. Bratcher complained that she and her husband were standing near a road with their seven-year old son and a neighbor, having a discussion, when Lockhart drove by in a Department truck, shaking his fist and yelling at the group. Bratcher stated that no one had waved to Lockhart and that it was not possible that he was waving at the group but was, instead, shaking his fist in an unfriendly manner. The Commission found that the reports of the incident at the hearing, as described by Mr. and Mrs. Bratcher and the neighbor, were consistent.

■ The hearing officer had rejected the Bratcher complaint as a reason for discipline, finding that it was not supported by substantial, competent evidence and was based on hearsay. However, the Commission correctly concluded that hearsay is admissible in hearings before the Commission and its hearing officer. *See* I.C. § 67–5251(1); *Hoyt v. Morrison–Knudsen Co.,* 100 Idaho 659, 661, 603 P.2d 993, 995 (1979). Therefore, the Commission weighed the credibility of the allegation against Lockhart's explanation of the incident. In a written response to the allegation, Lockhart had stated that the Bratcher group began waving their arms when they saw his truck, and that he waived his arm to acknowledge them. The Commission, based on Lockhart's "credibility problems" and the "improbability of a salute acknowledging the group being mistaken for a shaken fist and yelling," found that the Bratcher allegation was true.

*(b) The Horse Trailer Incident.*

On January 11, 1989, Schlegle distributed a memorandum to all McCall Department personnel, informing them that permission to use a certain horse trailer belonging to the Department would have to be obtained from himself or through Jeff Rohlman, a biologist with the Wildlife division. Lockhart responded with an acerbic memorandum critical of both Schlegle and Rohlman. The Commission found that "Lockhart's memo was an overreaction to an obvious need for keeping track of the equipment."

*(c) Inappropriate comments regarding superiors and subordinates.*

The Commission found that in at least one meeting, Lockhart called his subordinate, Randy Evans, a "dumb shit." Lockhart further threatened Evans that he would be fired, stated that Evans was worthless and was a "piece of shit," and generally used fear as a supervisory tactic. On January 6, 1989, Lockhart berated Evans so loudly about damage to a snowmobile trailer that other personnel on the floor above in the building could hear him. Lockhart called Evans "a son of a bitch," yelling that Lockhart was "at war with Wildlife" and that anything Evans did reflected on him. The Commission found that another employee who had caused similar damage to the trailer was not treated as harshly.

The Commission also cited testimony that Lockhart referred to supervisors in obscene terms. Specifics included calling his immediate supervisor a "spineless mother f——r," and referring to the regional supervisor as a "short, little red-haired bastard." Lockhart also referred to the office secretary as a "dumb bitch," and said that he would "get me a bitch" when he learned that she probably had mailed a complaint as an anonymous "Concerned Sportsman," which ultimately led to the discovery of Lockhart's work for the McCall police department.

The Commission cited Lockhart's testimony where he stated that it was rare for him to use profanity, and his admission that he had called Randy Evans "a name." In addition, Lockhart testified that he did not use all the words Evans said he used, but that he "doesn't really remember." Lockhart offered no specific rebuttal to the other allegations but asserted that the use of profanity was common in the Department. The Commission acknowledged that "game warden" language within the Department was not unacceptable; however, it concluded that "demeaning comments and profanity directed at individual subordinates and supervisors cannot be condoned."

Lockhart then sought judicial review of the Commission's decision. On December 10, 1990, the district court dismissed Lockhart's appeal because of a lack of jurisdiction. The Idaho Supreme Court reversed the district court's dismissal order, holding that jurisdiction was proper, and remanded the case for further proceedings. *See Lockhart v. Department of Fish and Game,* 121 Idaho 894, 828 P.2d 1299 (1992).

On January 14, 1993, the district court rendered a decision concluding that the Commission's findings on all but one issue were supported by substantial, competent evidence. *See* I.C. § 67–5318. With respect to the Commission's determination that Lockhart's comment regarding female legislators was an appropriate basis for discipline, the district court remanded the case to the Commission for it to consider the effect of I.C. § 67–5311(2) and prior Supreme Court decisions addressing constitutionally protected speech.

On September 20, 1993, the Commission entered its decision finding that Lockhart's comment about female legislators did not involve a matter of public concern and was therefore not protected speech under applicable precedent. The Commission also found that Lockhart's comments were not protected by I.C. § 67–5311(2). Lockhart again appealed to the district court. On August 10, 1994, the district court issued a final decision, ruling that the statement about female legislators related to a matter of public concern. However, the court found that the comment was not protected speech under the balancing test set forth in U.S. Supreme Court decisions or under I.C. § 67–5311(2). It is from this decision that Lockhart has appealed.

## ANALYSIS

■ The applicable standard for a district court's review of a Personnel Commission decision is provided by statute:

Upon appeal of a decision of the commission, the district court may affirm, or set aside and remand the matter to the commission upon the following grounds, and shall not set the same aside on any other grounds:

(1) That the findings of fact are not based on any substantial, competent evidence;

(2) That the commission has acted without jurisdiction or in excess of its powers;

(3) That the findings of fact by the commission do not as a matter of law support the decision.

I.C. § 67–5318. This same standard of review applies when this Court examines the Commission's decisions. *See Dept. of Health and Welfare v. Sandoval*, 113 Idaho 186, 189, 742 P.2d 992, 995 (Ct.App.1987).[1]

### I.

**WHETHER THE COMMISSION PROPERLY DETERMINED THAT LOCKHART'S COMMENT REGARDING FEMALE LEGISLATORS WAS NOT CONSTITUTIONALLY PROTECTED SPEECH.**

■ The inquiry into the protected status of speech is a question of law. *Lubcke v. Boise City/Ada County Housing Authority*, 124 Idaho 450, 465, 860 P.2d 653, 668 (1993), *quoting Connick v. Myers*, 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 1690, n. 7, 75 L.Ed.2d 708 (1983). On issues of law, the court exercises free review. *State v. Koller*, 122 Idaho 409, 410, 835 P.2d 644, 645 (1992).

■ Whether speech is constitutionally protected and precludes discipline of an employee involves a four-part test: First, the court must determine whether the speech may be fairly characterized as constituting speech on a matter of public concern. *Waters v. Churchill*, — U.S. —, —, 114

S.Ct. 1878, —, 128 L.Ed.2d 686, 694 (1994); *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *Lubcke*, 124 Idaho at 465, 860 P.2d at 668. If the speech involves a matter of public concern, then the court must balance the employee's interest in commenting upon matters of public concern against the interest of the state, as an employer, in promoting the efficiency of the public services it performs. *Waters*, — U.S. at —, 114 S.Ct. at —, 128 L.Ed.2d at 695; *Connick*, 461 U.S. at 142, 103 S.Ct. at 1687, *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *Lubcke, supra*. Third, if the balance favors the employee, then the employee must show that the protected speech was a substantial or motivating factor in the detrimental employment decision. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 285, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977); *Farnworth v. Femling*, 125 Idaho 283, 287, 869 P.2d 1378, 1381 (1994). Finally, if the employee meets this burden, then the employer is required to show by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected speech. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576; *Farnworth, supra; Munch v. Bd. of Correction, State of Idaho*, 105 Idaho 53, 56, 665 P.2d 1063, 1066 (1983). Accordingly, we will analyze the factors which are necessary to reach a determination of the issue in this case.

#### (a) *Matter of Public Concern*

■ "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1689–90. In this regard, the employee's statement must be considered in the manner, time, and place in which it was made. *Connick*, 461 U.S. at 152, 103 S.Ct. at 1693. Further, "The inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a

---

1. *Sandoval* discusses the standard of review under I.C. § 67–5316(*l*), as it read prior to the 1986 amendments. However, the language from the prior statute mirrors the language of I.C. § 67–5318.

matter of public concern." *Rankin,* 483 U.S. at 387, 107 S.Ct. at 2898. " '[D]ebate on public issues should be uninhibited, robust, and wide-open, and ... may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.' " *Id., quoting New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).

■ Here, the Commission concluded that the statement regarding female legislators was not a matter of public concern. The district court disagreed, concluding that the intelligence of members of the state legislature was a matter of public concern. We note that had the record conclusively established that Lockhart stated that "female legislators have nothing between their ears," we might have been inclined to rule that his comment represented nothing more than a bigoted perception of women's intelligence and was therefore not speech involving a "matter of public concern." However, because it appears from the record that Lockhart was referring to the intelligence of specific female legislators, we agree with the district court's analysis and hold that comments regarding the intelligence of members of Idaho's legislature constitutes a matter of public concern.

(b) *The Balancing Test: Lockhart's interest in commenting on a matter of public concern versus the Department's interest in promoting the efficiency of its public services.*

■ In *Pickering v. Board of Education,* 391 U.S. at 568, 88 S.Ct. at 1734, the United States Supreme Court said:

> The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

When balancing these respective interests, some attention must be paid to the responsibilities of the employee within the agency. The burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails. Where ... an employee serves no confidential, policy-making, or public contact role, the danger to the agency's successful functioning from that employee's private speech is minimal.

*Rankin,* 483 U.S. at 390–91, 107 S.Ct. at 2900. If a public employee's duties include public contact, the employee is subject to a higher standard of caution regarding speech. *Bates v. Hunt,* 3 F.3d 374, 378 (11th Cir. 1993); *Erickson v. Bd. of County Comm'rs,* 801 F.Supp. 414, 422 (D.Colo.1992).

■ The district court upheld the Commission's conclusion that the interests of the Department in promoting the efficiency of its operations outweighed Lockhart's interest in commenting on the intelligence of certain legislators. The district court stated that it is fundamental to the effective and efficient operation of a politically sensitive executive agency of the state, such as the Fish and Game Department, that it maintain good relations with the legislative branch. The district court further observed:

> There is no doubt that in many circumstances a [Department] employee's criticism of the legislature in general or individual legislators in particular would be entitled to First Amendment protection, notwithstanding the competing governmental interest. It is quite another thing, however, to publicly insult a class of legislators at a meeting intended to foster improved relations between the Department and the Legislature."

The court noted that Lockhart's job, at the time of the incident, involved contact with the public and that his comment "tended to have a detrimental and potentially devastating impact on the close working relationship between Fish and Game and the Legislature, a relationship that was absolutely vital to the efficient operation of the Department."

We agree with the district court's analysis and conclude that the Department's interest in promoting the efficiency of the public services it performs through its employees outweighed Lockhart's interest in commenting on the intelligence of certain female legislators. In light of our conclusion on this issue,

we need not apply the remaining two factors in the four-part test enunciated above. Accordingly, we hold that the disciplinary measures imposed by the Department did not offend the First Amendment.

## II.

### WHETHER THE COMMISSION PROPERLY CONCLUDED THAT LOCKHART WAS NOT PROTECTED FROM DISCIPLINARY MEASURES BY I.C. § 67–5311(2).

■ I.C. § 67–5311(2) provides that classified employees of a state department retain the right to:

> (b) Express an opinion as an individual privately and publicly on political subjects and candidates;
>
> . . . .
>
> (n) Otherwise participate fully in public affairs, except as prohibited by law, in a manner which does not materially compromise the neutrality, efficiency, or integrity of the employee's administration of state functions.

The district court affirmed the Commission's determination that Lockhart's statement regarding certain legislators was not protected pursuant to I.C. § 67–5311(2). Substantial, competent evidence supported the Commission's finding that Lockhart's statement was not made "as an individual." Therefore, he did not retain the right to express his opinion on this matter pursuant to I.C. § 67–5311(2)(b). As shown by the evidence presented at the hearing, Lockhart, when he made the statement, was expressing his opinion as an on-duty Department officer at a Departmental meeting to discuss Department issues. Also, as previously noted, the legislator to whom Lockhart made the comment testified that she understood Lockhart was representing the Department at the meeting.

Moreover, as demonstrated in the constitutional analysis set forth above, substantial, competent evidence also supported the Commission's conclusion that in making the comment, Lockhart materially compromised the efficiency and integrity of his administration of state functions. Therefore, we reject Lockhart's argument that in making the comment regarding female legislators, he was exercising his right under I.C. § 67–5311(2)(n) to "participate fully in public affairs."

## III.

### WHETHER THE COMMISSION IMPROPERLY DISREGARDED THE HEARING OFFICER'S DETERMINATIONS REGARDING WITNESS CREDIBILITY.

■ Lockhart contends that the Commission improperly disregarded the hearing officer's determinations regarding witness credibility. Where credibility is crucial and where first-hand exposure to the witnesses may strongly affect the outcome, the Personnel Commission should not override the hearing officer's impressions unless it makes a cogent explanation of its reasons for doing so. *Starr v. Idaho Transp. Dept.,* 118 Idaho 127, 129, 795 P.2d 21, 23 (Ct.App.1990), *quoting Sandoval,* 113 Idaho at 190, 742 P.2d at 996.

■ The Commission stated that it reversed the hearing officer's determinations regarding three matters—the Bratcher complaint, the horse trailer memorandum, and inappropriate comments regarding superiors and subordinates. We note, however, that the hearing officer did not make specific findings regarding the horse trailer memorandum. In fact, the only Department allegations that the hearing officer explicitly ruled on were the Bratcher complaint, the allegation that Lockhart "failed to adequately perform his duties and responsibilities as a supervisor and as a representative of the department," and the allegation that Lockhart "was repeatedly and openly critical of his superiors and . . . was [in] continual conflict with peers, subordinates, supervisors and the public." The hearing officer never made specific findings regarding witness credibility. The officer simply stated that these allegations by the Department were not supported by substantial, competent evidence and that the Bratcher complaint was also based on hearsay.

The Commission concluded that Lockhart's explanation of the Bratcher incident was not

as credible as the description offered by the Bratchers and their neighbor. Also, in addressing Lockhart's comments regarding superiors and subordinates, the Commission stated that "Lockhart's defense of these allegations is unconvincing." In every instance in which the Commission disagreed with the hearing officer's findings or conclusions, it provided a detailed and cogent explanation of its reasons with extensive citation to the hearing transcript. Thus, we conclude that the Commission properly reversed the hearing officer's determinations regarding these allegations. *See Starr, supra; Sandoval, supra.*

### CONCLUSION

In its decision, the Commission recited numerous incidents which provided the Department with ample justification for the disciplinary measures it took with respect to Lockhart. In so doing, the Commission properly reversed some of the hearing officer's determinations, giving a cogent explanation for its reasons in that regard.

Additionally, while we do not accept Lockhart's representation that he was disciplined solely for his comment regarding certain female legislators, we conclude that disciplining Lockhart for this comment did not violate Lockhart's First Amendment or statutory rights.

The district court's opinion upholding the Commission's decision is affirmed. Costs to respondent, Department of Fish and Game. I.A.R. 40.

LANSING and PERRY, JJ., concur.