968 P.2d 261

**Llewellyn SOONG, Plaintiff–Appellant,**

v.

**IDAHO DEPARTMENT OF HEALTH AND WELFARE and Jerry L. Harris, its Director, Defendants–Respondents.**

No. 23575.

Court of Appeals of Idaho.

Nov. 9, 1998.

Danny J. Radakovich, Lewiston, for Plaintiff-Appellant.

Alan G. Lance, Attorney General; Marcy J. Spilker, Deputy Attorney General, Boise, for Defendants-Respondents. Marcy J. Spilker argued.

PERRY, Judge.

Llewellyn Soong appeals from the district court's order affirming the Idaho Personnel Commission's decision upholding the Idaho Department of Health and Welfare's termination of Soong's employment. For the reasons set forth below, we affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Soong began work as a therapeutic recreational specialist for the Department of Health and Welfare at State Hospital South (SHS) in 1979. In January 1990, he transferred to a similar position at State Hospital North (SHN). He was terminated in January 1994.

After his termination, Soong instituted the appropriate grievance process. Eventually, an evidentiary hearing was held before a hearing officer of the Idaho Personnel Commission (IPC), where testimony revealed that Teri Rainey was the supervisor during Soong's tenure at SHN. In June 1993, Rainey conducted an annual performance evaluation and classified Soong as "needs improvement" due to poor job performance, including his inability to correctly perform patient assessments. As a result of this evaluation,

Soong was placed on a ninety-day special evaluation period. At the end of the ninety-day period, Rainey reevaluated Soong, again classifying him as "needs improvement" because of his lack of clinical skills in performing patient assessments and inadequacies in record documentation. Rainey extended Soong's special evaluation period for another sixty days. At the end of the sixty-day extension, Soong's performance was once more rated as "needs improvement." As a result, Rainey outlined specific clinical expectations, based on Soong's job description, and required Soong to make substantial progress toward those expectations in order to preclude further disciplinary action. Soong was placed on another sixty-day special evaluation period. On January 24, 1994, Rainey evaluated Soong's performance during the previous sixty-day period and determined that Soong's performance remained unacceptable. An intent to dismiss letter was issued that same day. Soong was terminated from employment at SHN on January 31, 1994.

Based on the evidence presented, the hearing officer rendered extensive findings of fact, conclusions of law and a preliminary order upholding the dismissal. Soong appealed the hearing officer's preliminary order to the IPC which adopted the hearing officer's decision. Soong then filed an appeal with the district court which again upheld Soong's termination. Soong appealed.

## II.

## STANDARD OF REVIEW

 Soong appeals the order of the district court. We utilize the same standard of review set forth in I.C. § 67–5318. *Lockhart v. State Dept. of Fish and Game*, 127 Idaho 546, 552, 903 P.2d 135, 141 (Ct.App.1995). Thus, this Court will not set aside the decision of the commission unless the findings of fact are not based on any substantial, competent evidence; the commission has acted without jurisdiction or in excess of its powers; or the findings of fact by the commission do not as a matter of law support the decision. I.C. § 67–5318; *Lockhart*, 127 Idaho at 552, 903 P.2d at 141. Judicial review of administrative action requires that a court

decide, in light of the entire record, whether the agency's findings of fact are reasonable. *Idaho State Insurance Fund v. Hunnicutt*, 110 Idaho 257, 260, 715 P.2d 927, 930 (1985). With these principles in mind, we turn to the merits of Soong's appeal.

## III.

## ANALYSIS

### A. Excluded Evidence

Soong contends that the hearing officer improperly excluded relevant evidence. Soong asserts that the Personnel System Act, I.C. §§ 67–5301 to –5342, (the Act) employs essentially a "let 'em play" philosophy. Soong avers that all salient information should have been before the hearing officer, relying on I.C. § 67–5316(8), which states that the "hearing officer to whom the matter has been assigned shall make such inquiry and investigations as shall be deemed necessary."

 We review questions of relevancy de novo. *Lubcke v. Boise City/Ada County Hous. Auth.*, 124 Idaho 450, 466, 860 P.2d 653, 669 (1993). "Relevant Evidence" means evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. The Idaho Rules of Evidence do not fully apply during a termination hearing; however, a hearing officer "may exclude evidence that is irrelevant." IDAPA 04.11.01.600.

 Soong complains that the hearing officer improperly excluded the testimony of Kasia Baumer and Cokia Arthur. Baumer, a psychiatric technician who had worked with Soong at both SHS and SHN, testified that the structure and emphasis between SHS and SHN were very different. The hearing officer, while allowing Baumer's testimony regarding her observations of Soong at SHN, excluded testimony of Baumer's observations of Soong at SHS. Additionally, Arthur, an employee at Tri–State Health and Rehabilitation Center, in Clarkston, Washington, was precluded from testifying regarding her observations of Soong at Tri–State. Soong was

employed by Tri–State after his dismissal from SHN. Arthur admittedly knew nothing about the therapeutic recreational specialist position at SHN and had never reviewed the job description in connection with employment at SHN.

The fact of consequence at the hearing was whether Soong satisfactorily performed in conformity with his job description and the clinical expectations while at SHN. The evidence Soong sought to introduce via these two witnesses, which dealt with Soong's performance in different jobs at different institutions, did not have a tendency to make that fact more or less probable. Therefore, the evidence was irrelevant and properly excluded by the hearing officer.

## B. Commission's Findings of Fact

### 1. Evidence considered

Soong asserts that any reliance on events not specifically set forth in the letter of termination may not be utilized to justify his dismissal. The Act requires that the IPC adopt a rule for disciplinary dismissal of employees "only for cause with reasons given in writing." I.C. § 67–5309(n).

█ In the case at bar, Soong's termination letter stated he was being dismissed for: (1) "Failure to perform the duties and carry out the obligations imposed by the state constitution, state statute or rules of the Department of the Idaho Personnel Commission"; (2) "Inefficiency, incompetency or negligence in performing duties"; and (3) failure "to meet the Clinical Expectations that were discussed with you and your Supervisor, Teri Rainey, CTRS, on 12/3/93." The letter also referenced Soong's annual performance evaluation dated June 1993. Annual performance evaluations cover, as the term indicates, approximately one year of employment. Therefore, Soong's performance from June 1992 to his termination was covered by the dismissal letter. Moreover, any incident of inefficiency, incompetence or negligence in performing his duties was properly considered because such performance was referenced in the termination letter.

Thus, although correctly stating the requirements of the Act, Soong reads his letter of termination too narrowly. Not only was Soong's failure to meet the clinical expectations a ground for his termination, but so was any episode of inefficiency, incompetence or negligence in performing his duties at SHN. Therefore, we conclude that the evidence was properly considered.

### 2. Job description

Soong contends that he cannot be terminated for inadequate job performance unless there is a valid job description against which his performance can be measured. Although the Department placed in evidence a copy of Soong's job description, he asserts that it is invalid. The gravamen of his contention is that the term "classification," as used in the Act, is intended to be synonymous with "job description." If this is so, according to Soong, the IPC would have had to issue each job description. Soong contends that there was "no real proof" that the job description submitted during the hearing was approved by the state personnel director.

The Idaho legislature created the Idaho Personnel Commission (IPC) and the system governing employment by the state of Idaho. I.C. §§ 67–5301 to –5342. The IPC was instructed to adopt a job classification system, after analyzing the duties and responsibilities of each position. I.C. § 67–5309(a). A "class" is defined as "a group of positions sufficiently similar as to the duties performed, degree of supervision exercised or required, minimum requirements of training, experience or skill, and other characteristics, that the same title, the same tests of fitness and the same schedule of compensation may be applied to each position in the group." I.C. § 67–5302(3). From this definition, the purpose of job classes is to group similar positions together so they will be treated consistently for recruitment and compensation. Such grouping would not be possible if, as Soong suggests, each class description had to include all of the duties and responsibilities of each individual position with sufficient specificity to serve as a basis for performance evaluations of the person holding that position. The IPC was also given the power

to adopt rules governing discipline. Specifically enumerated under I.C. § 67–5309 is a laundry list of grounds constituting cause for discipline, including the failure "to perform the duties and carry out the obligations imposed by the state constitution, state statutes, and *rules of the employee's department,* or rules of the personnel commission." I.C. § 67–5309(n)(1) (emphasis added).

In support of his contention that class and job description are synonyms, Soong relies on *Brigham v. Dept. of Health and Welfare,* 106 Idaho 347, 679 P.2d 147 (1984). However, *Brigham* is factually distinguishable from this case. In *Brigham,* the Idaho Supreme Court addressed the scope of procedural rights due a probationary employee upon dismissal, holding that an after-the-fact application of an outdated and inapplicable job description and an evaluation made after the dismissal did not satisfy the statutory requirements of the Act. Nowhere in *Brigham* does the Idaho Supreme Court state that the classification required by the Act and an employee's job description are synonyms. Therefore, to the extent Soong relies on *Brigham* to support his contention that a job classification system is synonymous with a job description, his reliance is misplaced.

■ Contrary to Soong's position, we hold that the classification which the Act requires is not synonymous with an employee's job description. In the instant case, Soong was provided, and signed, a job description. He was evaluated on numerous occasions, based on that job description. Thus, we conclude that the requirements of the Act were satisfied and find no error in this regard.

### 3. Clinical expectations

■ Soong alleges that, based on the letter of termination, he was dismissed solely for his failure to achieve the standards set forth in the clinical expectations document. This document described in detail the specific job functions Soong would have to be able to perform in order to meet his supervisor's expectations. It also informed him that, if during the special evaluation period it was determined that he was not making "significant progress" toward satisfactory job performance, disciplinary action would be taken which could include dismissal. He asserts that since there was no evidence that the clinical expectations were made part of his official job description, reliance on those expectations was an improper basis for termination.

As stated above, Soong was dismissed for more than his failure to meet the clinical expectations. Moreover, at the hearing on this matter, several witnesses testified that the clinical expectations were based on the job description. Rainey testified that the clinical expectations set forth the same expectations she had of other employees and were based on the job description. Additionally, other staff members also testified that those were indeed the clinical expectations Rainey had of all Soong's peers.

Soong also contends that the clinical expectations were an insufficient basis for termination because they did not clearly advise him of what was expected. He focuses on the fact that the term "significant progress" was not defined.

The *Brigham* Court held that the purpose of a job description and an evaluation is to provide an employee a "fair chance to meet the expectations of those who hired" him or her, as well as preclude an employer from making an "arbitrary and capricious" decision. *Brigham,* 106 Idaho at 351, 679 P.2d at 151. The clinical expectations in this case consisted of more than two typewritten pages of tasks, including specific time constraints, Soong needed to complete in order to preclude further disciplinary action by the Department. Soong and Rainey met at least five times after the issuance of the clinical expectations with the final meeting occurring on January 24, 1994. They discussed the clinical expectations during each meeting, and Soong stated that he understood the expectations. Thus, Soong was afforded a fair chance to meet Rainey's expectations.

During oral argument, Soong contended that viewing the clinical expectations as precise, because there were specific tasks and time requirements, while not taking into account the meaning of "substantial progress," is analogous to "two ships passing in the night." However, an evaluation of an em-

ployee necessarily involves, to some degree, the subjectivity of the evaluator. So long as an employee is provided a valid job description, is evaluated based on that job description, and the evaluation is supported by evidence, the supervisor's actions cannot be considered arbitrary or capricious. In this case, Rainey attempted, to the best of her ability, to limit the subjective component of Soong's evaluation by setting forth specific tasks and time constraints.

Thus, we conclude that there is substantial and competent evidence in the record to support the IPC's determination that the clinical expectations were based on the job description that governed Soong's employment at SHN. Additionally, the IPC's conclusion that the clinical expectations were sufficiently clear to inform Soong of Rainey's expectations is also supported by such evidence. Therefore, we find no error.

### 4. Sufficiency of the evidence

 Although admitting that he did not comply with the time constraints and other rules set forth in the clinical expectations, Soong asserts that there was insufficient proof he was incompetent to perform the duties of a therapeutic recreation specialist. However, Soong was terminated because his performance was unsatisfactory when evaluated in light of his job description and the clinical expectations based on that job description.

During the hearing, Rainey testified that Soong lacked structure and had poor judgment and insight. Between June 1992 and Soong's termination, Rainey and Soong met on approximately twenty-eight occasions to discuss various incidents during which Soong's performance was not acceptable. Rainey documented these meetings, in summary fashion, placing this document in Soong's file. The hearing officer had this summary before him when making his decision. Moreover, Soong was placed on a series of special evaluation periods, from June 1993 until he was terminated in January 1994. Finally, Soong admittedly did not comply with all aspects of the clinical expectations.

Soong presented little, if any, evidence to rebut that set forth by the Department. Soong's witnesses were either from a different discipline, had not observed him in the same settings as Rainey, or had not extensively reviewed Soong's documentation. Rainey, as well as Soong's witnesses, testified that Soong had empathy toward, and good rapport with, his patients. However, unlike Rainey, none of Soong's witnesses were in a position to evaluate his job performance based on his job description and the clinical expectations.

### III.

### CONCLUSION

We hold there was substantial, competent evidence supporting the findings of fact of the hearing officer, which were adopted by the IPC. Additionally, we conclude that there exists no error in the record below. Thus, we affirm the order of the district court upholding the IPC's decision to terminate Soong.

LANSING, C.J., and SCHWARTZMAN, J., concur.