983 P.2d 842

**A.E. "Ed" FRIDENSTINE,
Petitioner–Appellant,**

v.

**IDAHO DEPARTMENT OF
ADMINISTRATION,
Respondent.**

No. 24232.

Supreme Court of Idaho,
Boise, January 1999 Term.

Aug. 12, 1999.

190

William B. Latta, Jr., Boise, argued for appellant.

Hon. Alan G. Lance, Attorney General; Boise; Stoel Rives, Boise, for respondent. Kathleen P. Brooks argued.

WALTERS, Justice.

This is an appeal from an order by the Idaho Personnel Commission upholding the dismissal of A.E. Fridenstine from his position as Chief of the Idaho Bureau of Risk Management. The district court affirmed the Commission's order. We likewise affirm.

## BACKGROUND AND PROCEDURAL HISTORY

Fridenstine served as Chief of the Bureau of Risk Management (BRM) from 1979 until his dismissal in 1995. Pamela Ahrens, the Director of the Idaho Department of Administration, dismissed Fridenstine on May 17, 1995 based upon ten different allegations of misconduct. Following an eight-day evidentiary hearing, a hearing officer for the Idaho Personnel Commission affirmed Ahrens' decision to dismiss Fridenstine. The hearing officer found support for six of the allegations of misconduct relied upon by Ahrens including the failure to adequately supervise Al Campbell, an employee of the BRM; the failure to recognize and address perceived favoritism in the selection of outside counsel to handle claims managed by the BRM; the

failure to recognize and address conflicts of interest created by his selection of counsel to represent him in a grievance filed against the Department and in the present action; and the disclosure of confidential information from official records. Both the Idaho Personnel Commission and the district court affirmed the hearing officer's decision.

Fridenstine does not challenge the facts found by the hearing officer. Rather, Fridenstine argues that his due process rights were violated by the Department of Administration, and that his dismissal was motivated by constitutionally impermissible factors.

## STANDARD OF REVIEW

Appellate review of Personnel Commission decisions is controlled by I.C. § 67–5318. The decision will not be set aside unless the Court finds:

(1) That the findings of fact are not based on any substantial, competent evidence;

(2) That the commission has acted without jurisdiction or in excess of its powers;

(3) That the findings of fact by the commission do not as a matter of law support the decision.

I.C. § 67–5318 (1989); *Lockhart v. State, Dept. of Fish & Game,* 127 Idaho 546, 903 P.2d 135 (Ct.App.1995). Fridenstine has not challenged the findings of fact, therefore, our review is limited to whether the Commission acted in excess of its powers.

## ANALYSIS

**I. Fridenstine's due process rights were not violated.**

■■■ As Director of the Bureau of Risk Management, Fridenstine was a "classified" employee of the State of Idaho. "Classified" employees have a property interest in their continued employment. *Arnzen v. State,* 123 Idaho 899, 854 P.2d 242 (1993). Any deprivation of this property interest in continued employment must comport with due process. *Id; Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The minimum due process requirements are notice of the contemplated action and an opportunity to be heard *before* the

deprivation of a substantial property interest. *Id.* Fridenstine contends that the department violated his right to due process because he was not given sufficient notice of the evidence against him prior to Ahrens' decision to dismiss him. We disagree.

On December 20, 1994, Fridenstine was notified in writing by Lloyd Howe, then Director of the Department of Administration, that he was being suspended pending an investigation into the matters that eventually resulted in his dismissal. On January 16, 1995, Pamela Ahrens succeeded Howe as Director of the Department of Administration. Ahrens discontinued an ongoing investigation that was being conducted by the Idaho Bureau of Investigation because she felt it was taking too long, and she instructed legal counsel to interview Fridenstine. Fridenstine was represented by his attorney, William Latta, at the interview. Inasmuch as Ahrens became the Director after Fridenstine's suspension by Howe, she asked Rebecca Fry, the Human Resources Manager, to prepare a memo (Fry memo) for her that detailed the allegations against Fridenstine. On March 10, 1995, based upon the transcript of the interview and the Fry memo, Ahrens notified Fridenstine in writing that she was considering dismissing him. Ahrens attached a copy of the memo detailing the allegations against Fridenstine, and indicated that she would be available to meet with him before making a final decision. Ahrens met with Fridenstine and his attorney for about two-and-a-half hours on March 14, 1995. After the meeting, and before any decision was made, Fridenstine was specifically asked whether he required clarification of any of the issues being considered by Ahrens or whether he wished to submit any additional information for her consideration. On March 17, 1995, Ahrens dismissed Fridenstine.

Fridenstine acknowledges that he was given detailed notice regarding the allegations of misconduct for which Ahrens was considering his dismissal prior to their meeting on March 14. Nevertheless, Fridenstine argues that he should also have been given all evidence supporting the allegations before the meeting. Fridenstine's argument is based primarily upon language in *Arnzen v. State.*

In *Arnzen,* this Court stated that "due process requires, at a minimum, notice of the contemplated action and evidence relied upon for the contemplated action, and an opportunity to respond." *Id.* at 904, 854 P.2d at 247. Fridenstine contends that *Arnzen* required the Department to proffer all evidence—approximately 300 exhibits later introduced at the eight-day post-termination hearing—before the meeting with Ahrens. According to Fridenstine, a summary or explanation of the evidence would not have sufficed.

We find no support for Fridenstine's position in *Arnzen.* The language Fridenstine relies upon does not purport to require the proffer of all evidence, but rather notice of the evidence. In the sentence following that quoted by Fridenstine, this Court stated that "[t]he first component of the due process requirement, notice, may be an *oral* or written notification of the charges against the employee and the basis and evidence supporting those charges." *Id.* at 904, 854 P.2d at 247 (citing *Loudermill, supra*)(emphasis added). In *Loudermill,* which was relied upon in *Arnzen,* the U.S. Supreme Court stated:

> The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506 (citations omitted). Oral notification and an explanation of the evidence simply cannot be reconciled with Fridenstine's contention that the department had an affirmative duty to supply him physically with all items of evidence prior to his meeting with Ahrens.

 Fridenstine's position is also inconsistent with the flexible nature of the due process inquiry. The two basic requirements of procedural due process, notice and an opportunity to be heard, are a product of the attempt to balance the competing interests at stake and the risks of an erroneous termination. *Loudermill* at 542–43, 105 S.Ct. at

1493–94, 84 L.Ed.2d at 504. "Due process is not a rigid concept to be mechanically applied to every adversary confrontation; rather, due process is 'flexible and calls for such procedural protections as the particular situation demands.'" *Bowler v. Board of Trustees, Etc.*, 101 Idaho 537, 542, 617 P.2d 841, 846 (1980). The nature and extent of the opportunity to be heard depends upon the significance of the interests at stake and the nature of the subsequent proceedings. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). The purpose of a pre-termination hearing is not to conclusively establish the propriety of the dismissal. "It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill* at 545–46, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Loudermill*, 470 U.S. at 545, 105 S.Ct. at 1495, 84 L.Ed.2d at 506 (citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). Under the circumstances presented by this case, we hold that Fridenstine was provided sufficient notice of both the allegations of misconduct and the evidence against him to facilitate a meaningful response.[1]

Fridenstine also argues that the Fry memo failed to give him sufficient notice because it did not link each allegation of misconduct with a specific violation of Personnel Commission rules. Although the memo stated that four separate rules had been violated and detailed ten different allegations of misconduct that purportedly violated those four rules, the memo did not attempt to link the allegations of misconduct and the rules with any greater detail. According to Fridenstine, without this information he could not effectively rebut the allegations against him.

We find no merit in this argument. Before Ahrens made the decision to dismiss Fridenstine, he was specifically asked whether there were any issues that he wanted clarified or any additional information he would like considered. Fridenstine did not make any requests or object to the failure to link each allegation of misconduct with a specific rule. Had the issue been raised at that time, any perceived problems could have been easily rectified.

■ Although the due process inquiry focuses on the pre-termination procedures, this Court may also take into consideration the post-termination procedures, including in this case an eight-day evidentiary hearing, when evaluating Fridenstine's due process claim. *Allen v. Lewis–Clark State College*, 105 Idaho 447, 670 P.2d 854 (1983); *Boddie, supra*; *Loudermill, supra*. In light of the extensive procedures followed in this case, both pre- and post-termination, we hold that the Department did not violate Fridenstine's right to due process.

## II. Fridenstine's dismissal was not based upon impermissible factors.

Fridenstine argues that his dismissal was improper because it was based, in part, upon two impermissible factors. One of the reasons for Fridenstine's suspension and ultimate dismissal from the BRM was his refusal to recognize and address conflicts of interest created by his selection of counsel to represent him in a grievance against the Department of Administration and in this case. Fridenstine contends that his choice of counsel is constitutionally and statutorily protected, and that he cannot, therefore, be dismissed based upon that choice. Fridenstine also believes that his dismissal was motivated by his objection to the firing of Shauna Julian, a BRM employee. Fridenstine argues that his advocacy on Julian's behalf was constitutionally protected speech, and conse-

---

1. Fridenstine suggests that the Department had sole possession of the evidence necessary for him to defend himself. This, of course, is more troubling. However, there is no indication that Fridenstine ever requested any documents or other evidence from the Department. Furthermore, Fridenstine has not pointed to any specific information that he was denied access to that might have assisted with his defense. There is no indication whatsoever that the Department attempted to thwart Fridenstine's attempts to defend himself or tried to limit his access to the materials he needed. The record indicates that the Department gave Fridenstine every possible chance to explain his position.

quently an impermissible motivation for dismissing him. We find no merit in either of Fridenstine's arguments.

### A. Fridenstine's choice of counsel

In December 1994, Fridenstine hired William Latta to represent him in a grievance against the state. At the time, Latta also represented Al Campbell and Shauna Julian, two BRM employees who had worked under Fridenstine, in their claims against the state. Fridenstine was potentially a material witness regarding both Campbell and Julian's claims. And because of his position, Fridenstine was in possession of confidential information with respect to both of these claims as well as several additional ones that Latta had pending against the state in representing other claimants. The Department was concerned that Fridenstine would divulge confidential information, and the Department was particularly concerned with Fridenstine's failure to recognize the appearance of impropriety created by Latta's multiple representations.

█ Fridenstine argues that regardless of the other factors considered by Ahrens and upheld by the hearing officer he cannot be dismissed as a result of his choice of counsel. Fridenstine's constitutional argument is based upon *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Fridenstine contends that *Button* recognized a constitutional right to free association with counsel, and that the Department violated this right when it dismissed him in part for hiring Latta. We hold that Fridenstine did not have an absolute right to any counsel he might choose, and the Department had legitimate concerns with his choice in this case.

As the Department readily admits, Fridenstine has some protectable interest in his choice of counsel. *See Button, supra.* However, Fridenstine has not pointed to any authority indicating that this right is, or should be, unfettered. Fridenstine's interest must be balanced against the Department's interest in its employee's loyalty and the orderly operation of the agency. Fridenstine hired Latta to pursue a grievance against the Department and to help him keep his job. As Fridenstine wished to keep his job, the Department had a right to insist that he maintain his loyalty to the Department and protect its interests even while pursuing his grievance. In this regard, the Department had substantial and legitimate concerns with Fridenstine's choice of Latta to represent him. Latta had several cases pending against the state, two of which involved employees who had been under Fridenstine's direct supervision and were cases in which Fridenstine had been directly and indirectly involved. Fridenstine's failure to acknowledge and appreciate the appearance of impropriety and conflicts of interest exemplified for the Department his disregard for such concerns, which are paramount for a public agency. Furthermore, the Department's concerns proved well founded. Fridenstine admittedly disclosed some confidential information regarding Julian's case.

Fridenstine also argues that I.C. § 67–5315 provides a statutory right to be represented by his choice of counsel. At the time of Fridenstine's dismissal, § 67–5315 required a "procedure guaranteeing the employee the right to be represented by a person of the employee's own choosing at each step of the procedure, except the initial informal discussion with the immediate supervisor." I.C. § 67–5315(4)(c) (1989). This language, however, does not support the unfettered right that Fridenstine seeks. Section § 67–5315 guarantees representation by "a" person of the employee's choosing. Although this statute provides that the employee may choose his or her own counsel, the statute does not grant the employee an absolute right to choose any attorney regardless of other factors.

Under the circumstances, both Fridenstine and Latta should have recognized the obvious conflicts Latta's representation created. It was not improper for the Department to object to Latta's representation or to consider Fridenstine's failure to recognize and address the Department's concerns as a basis for his dismissal.

### B. Objections to Shauna Julian's dismissal

█ Fridenstine believes that his dismissal was also motivated by his advocacy on behalf of a dismissed employee, Shauna Jul-

**194**

ian. Fridenstine argues that this was protected speech for which he could not be disciplined. We disagree.

Whether speech is constitutionally protected and precludes discipline of an employee involves a four-part test: First, the court must determine whether the speech may be fairly characterized as constituting speech on a matter of public concern. If the speech involves a matter of public concern, then the court must balance the employee's interest in commenting upon matters of public concern against the interest of the state, as an employer, in promoting the efficiency of the public services it performs. Third, if the balance favors the employee, then the employee must show that the protected speech was a substantial or motivating factor in the detrimental employment decision. Finally, if the employee meets this burden, then the employer is required to show by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected speech.

*Lockhart v. State, Dept. of Fish and Game,* 127 Idaho 546, 552, 903 P.2d 135, 141 (Ct. App.1995) (citations omitted).

The hearing officer found that "Shauna Julian's termination was not a cause or factor in the decision to terminate Mr. Fridenstine." We find no basis in the record to support a different conclusion. Consequently, Fridenstine has failed to satisfy the third requirement articulated in *Lockhart.* Furthermore, given the numerous unrelated bases for Fridenstine's dismissal, which are unchallenged on appeal, it is clear that the Department had adequate grounds and would have dismissed Fridenstine regardless of any alleged advocacy on Julian's behalf.

## CONCLUSION

The decision of the district court upholding the order of the Idaho Personnel Commission sustaining Fridenstine's dismissal from the Bureau of Risk Management is affirmed. Costs to respondent, Idaho Department of Administration.

Justices SILAK, SCHROEDER, KIDWELL and MORFITT, PRO TEM, concur.