8 P.3d 675

**IDAHO DEPARTMENT OF CORRECTION, Petitioner–Appellant,**

v.

**Rick ANDERSON, Respondent.**

No. 25386.

Court of Appeals of Idaho.

Aug. 9, 2000.

Hon. Alan G. Lance, Attorney General; Timothy R. McNeese, Deputy Attorney General, Boise, for appellant.

Jim Jones & Associates, Boise, for respondent.

LANSING, Judge.

This action stems from the dismissal of respondent Richard Anderson from his employment with the Idaho Department of Correction (IDOC or Department) in 1996. Anderson appealed his dismissal to the Idaho Personnel Commission, which overturned the dismissal and ordered Anderson's reinstatement. IDOC appealed the Personnel Commission's decision to the district court, which affirmed. IDOC now further appeals to this Court.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1994, Richard Anderson was a classified employee of IDOC, holding the position of manager of the Receiving and Diagnostic Unit (RDU). The RDU evaluated and classified inmates entering the state correctional system to determine the appropriate placement and security needs. The RDU was part of the Idaho Maximum Security Institution (IMSI), and Anderson reported to the warden of IMSI, Arvin Arave.

In June 1994, a female inmate housed at the RDU reported to Correctional Officer Jeanette Weeks that Officer Pribble had sexually assaulted her. According to the inmate, Pribble approached her from behind, put his arm around her waist, pulled her against his body, and told her to "bend over and wiggle." Officer Weeks' own supervisor, Sergeant Smith, was on vacation so she reported the inmate's allegations to Anderson. Shortly thereafter, Anderson convened a meeting with the inmate, Pribble, Weeks, and Sergeant Smith to investigate the allegation. Pribble denied the inmate's allegation of a sexual assault. When the inmate was then asked about the allegations, she began to cry, apologized to Pribble, and stated that "it wouldn't happen again." Anderson, Weeks, and Smith all concluded that the inmate's allegation, which she had recanted at the meeting, had not been true. Smith entered a notation in Pribble's tracking file

about the incident,[1] but no further action was taken on the accusation by Anderson or anyone else.

At approximately the same time that the RDU inmate came forward with her allegations, two inmates at the Pocatello Women's Correctional Center (PWCC) filed written complaints alleging that Pribble had sexually molested female inmates at the RDU. The warden of PWCC, Bona Miller, did not act upon the complaints or report them to her superiors. Warden Miller did mention the complaints to Warden Arave and other prison officials at a wardens' meeting approximately one month later. In the intervening period, another inmate was molested by Pribble. In August 1994, the RDU inmate who had originally accused Pribble filed a written report reiterating the allegations that she had made in June. Shortly thereafter, Pribble was criminally charged for having sexual contact with female inmates. He eventually pleaded guilty to these felony charges.

When the accusations against Pribble came to his attention in August, James Spalding, the Director of IDOC, ordered an investigation. The investigation resulted in a number of recommendations regarding operations at IMSI and RDU, but did not address personnel issues. At some point during or after this internal investigation, IDOC management collected all documents concerning the Pribble incident, including Pribble's tracking file and the investigation file. The documents were then destroyed on the advice of an attorney working for IDOC and with the approval of Director Spalding. Before turning over the documents under his control, Anderson made copies, which he took home. Sergeant Smith also gave Anderson a copy of Pribble's tracking file at some point before giving that file to IDOC management. Anderson took this file to his home as well.

One year later, the Governor of Idaho requested a formal investigation of the Pribble matter and its handling by IDOC. The Idaho Department of Law Enforcement (IDLE) conducted the investigation, which took five months and included interviews of more than 240 people. Anderson met with IDLE investigators on three separate occasions. He directed his secretary to provide copies of all documents relevant to the Pribble incident that RDU had retained, including duplicates of the documents kept at Anderson's home. Anderson did not turn over to investigators the tracking file that Sergeant Smith had given to Anderson. Anderson later testified that he forgot that Smith had given him the document. Shortly after the beginning of the IDLE investigation, the position of RDU manager was abolished, and Anderson took a voluntary demotion to a human services supervisor position in lieu of a layoff.

According to IDLE personnel, the primary obstacle to its investigation was the fact that many of the relevant documents had been destroyed. The IDLE investigative report was completed in January, 1996, and identified for possible criminal prosecution one IDOC employee, the Administrator of Prisons, who had destroyed the IDOC records. After receiving the IDLE report, the Governor asked Director Spalding for an explanation of the remedial steps that IDOC had taken and suggested that the Board of Correction consider actions against personnel who did not act appropriately during the incident. Thereafter, Director Spalding accepted Warden Arave's retirement, reassigned the Administrator of Prisons from that post to warden of IMSI (the position that was vacated by Arave), and gave Warden Bona Miller a written reprimand and two weeks' leave without pay. Director Spalding also instituted further investigation of Anderson's and Sergeant Smith's roles in the Pribble incident.

During this further investigation, Anderson turned over a number of documents that he had been keeping at his home. These were a duplicate set of the documents that Anderson had previously directed his secretary to give to the IDLE investigators. He also submitted to a polygraph examination. During the pretest interview,

---

1. At the time, Department employees had informal working personnel files known as "tracking" files.

Anderson revealed that on the previous evening he had discovered at his home the documents that Sergeant Smith had given him from Pribble's tracking file. These documents were then turned over to the polygraph examiner. The results of the polygraph examination were inconclusive.

In July 1996, Director Spalding gave Anderson notice of contemplated disciplinary action, up to and including dismissal. The notice referred to the director's concerns about Anderson's integrity and judgment, the inconclusive results of the polygraph exam, the failure to turn over documents to IDLE investigators, inconsistencies in Anderson's statements to the IDLE investigators, his handling of the RDU inmate's complaint about Pribble, and Anderson's failure to report the inmate's complaint to Warden Arave. Anderson responded to the notice through his attorney, but in August, he received a memorandum from the director dismissing him. The director again cited inconsistencies in Anderson's statements to investigators and his failure to turn over documents in his possession in support of the director's conclusions that Anderson had not cooperated with the investigations of the Pribble matter. He also referred to Anderson's failure to report the RDU inmate's complaint to Anderson's supervisor as evidence of his lack of good judgment. The director found that Anderson's acts and omissions violated several IDOC policies. He stated that these violations warranted Anderson's termination under Idaho Personnel Commission rules, IDAPA 28.01.01.190.01.a (failure to perform the duties and carry out the obligations imposed by the state constitution, state statutes, or rules of the Department or the Personnel Commission) and 28.01.01.190.01.3 (insubordination or conduct unbecoming a state employee or conduct detrimental to good order and discipline in the Department).

Anderson filed a grievance regarding his dismissal which was heard by an IDOC review panel. The panel determined that IDOC lacked proper cause to terminate Anderson and recommended that he be reinstated to his position as human services supervisor and that he be compensated for legal fees he incurred in pursuing the grievance. Director Spalding rejected this recommendation and upheld Anderson's dismissal.

Anderson thereupon appealed his dismissal to the Idaho Personnel Commission pursuant to Idaho Code § 67–5316, and the matter was assigned to a Personnel Commission hearing officer. After conducting an evidentiary hearing, the hearing officer issued findings of fact and conclusions of law in which he concluded that IDOC had failed to prove, by a preponderance of the evidence, that Anderson had violated the identified IDOC policies or Personnel Commission rules. The hearing officer ordered Anderson's reinstatement with back pay and benefits, and awarded Anderson attorney fees and costs. IDOC then petitioned for review by the Personnel Commission pursuant to I.C. § 67–5317. The Personnel Commission issued a lengthy decision in which it reviewed the evidence that had been presented before the hearing officer and affirmed the decision of the hearing officer in all respects. The Personnel Commission also awarded attorney fees and costs to Anderson.

IDOC next appealed the Personnel Commission's decision to the district court pursuant to I.C. § 67–5318. The district court determined that the findings of the Personnel Commission were supported by substantial evidence and that the Personnel Commission's decision was supported, as a matter of law, by its findings of fact. Accordingly, the district court affirmed the Personnel Commission's decision. Again at this stage of the proceedings, IDOC was ordered to pay Anderson's attorney fees and costs. IDOC now takes this appeal from the decision of the district court.

## II.

### ANALYSIS

A state agency's authority to take disciplinary action, including a discharge from employment, against a classified employee is governed by statutory law and administrative rules. Idaho Code § 67–5309(n) directs that the Personnel Commission adopt a rule governing such disciplinary actions. That subsection requires that the Personnel Commis-

sion's rules shall include: "A rule for the disciplinary dismissal, demotion, suspension or other discipline of employees only for cause with reasons given in writing." Pursuant to this statute, the Personnel Commission promulgated IDAPA 28.01.01.190.01 which provides in part:

Disciplinary actions, including dismissal, suspension, demotion, or reduction in pay, may be taken against any employee in the state classified service for any of the following causes which occurred during the employee's employment:

a. Failure to perform the duties and carry out the obligations imposed by the state constitution, state statutes, or rules of the Department or the Personnel Commission.

. . . .

e. Insubordination or conduct unbecoming a state employee or conduct detrimental to good order and discipline in the department.

Idaho Code § 67–5316 establishes that a classified employee of a state agency may appeal disciplinary actions to the Personnel Commission. It provides if the action in dispute was a discharge, demotion or suspension, the Commission or its hearing officer shall order the reinstatement of the employee upon a determination "that proper cause did not in fact exist" for the disciplinary action. I.C. § 67–5316(4).

■ In an evidentiary hearing before the Personnel Commission or its hearing officer, the agency bears the burden to prove, by a preponderance of the evidence, the justification for the disciplinary action. *Starr v. Idaho Transportation Dep't,* 118 Idaho 127, 129, 795 P.2d 21, 23 (Ct.App.1990). When a matter has been initially assigned to a Personnel Commission hearing officer and is subsequently appealed from the hearing officer's decision to the Commission, the Commission conducts a *de novo* review of the record and renders an independent decision that effectively displaces the proposed decision of the hearing officer. *Idaho State Ins. Fund v. Hunnicutt,* 110 Idaho 257, 259, 715 P.2d 927, 929 (1985); *Department of Health & Welfare v. Sandoval,* 113 Idaho 186, 189, 742 P.2d 992, 995 (Ct.App.1987).

■ According to the notice of termination given to Anderson, he was dismissed pursuant to IDAPA 28.01.01.190.01.a and .e based upon Anderson's alleged violation of three IDOC policies. Those policies prohibited IDOC employees from failing or refusing to cooperate with an investigation of alleged illegal activities or violations of Department regulations; failing to properly discharge the duties of his or her position; and engaging in any other activity that is deemed detrimental to the proper discharge of the employee's duties and may come in conflict with attainment of the Department's goals. An agency bears the burden of persuading the Personnel Commission that the employee misconduct occurred upon which the disciplinary action is based. *Department of Health & Welfare v. Sandoval,* 113 Idaho 186, 188–89, 742 P.2d 992, 994–95 (Ct.App.1987). Hence, the issue before the Personnel Commission's hearing officer, and ultimately the Personnel Commission itself, was whether IDOC had proved by a preponderance of the evidence its allegations that Anderson had violated these policies and rules. Both the hearing officer and the Personnel Commission found that the Department had not met this burden.

■ When an appeal is taken to the district court from a decision of the Personnel Commission, the Commission's decision may not be set aside unless the court determines:

(1) That the findings of fact are not based on any substantial, competent evidence;

(2) That the commission has acted without jurisdiction or in excess of its powers;

(3) That the findings of fact by the commission do not as a matter of law support the decision.

I.C. § 67–5318. This same standard applies when this Court reviews the Personnel Commission's decision on further appeal. *Fridenstine v. Idaho Dep't of Admin.,* 133 Idaho 188, 190, 983 P.2d 842, 844 (1999); *Lockhart v. State, Dep't of Fish & Game,* 127 Idaho 546, 552, 903 P.2d 135, 141 (Ct.App.1995). In assessing whether a Personnel Commission decision is supported by substantial evidence, a reviewing court may not substitute its own

view of the evidence for that of the Commission but should evaluate whether the evidence supporting the decision is substantial when viewed in the context of the entire evidentiary record, including the evidence opposed to the Commission's view. *Hunnicutt,* 110 Idaho at 261, 715 P.2d at 931; *Sandoval,* 113 Idaho at 189, 742 P.2d at 995. If the Personnel Commission has found that an agency failed to meet its burden of proving employee misconduct, as the Commission did in the instant case, this Court "will overturn that finding only if the Commission lacked a reasonable basis to disbelieve the agency's evidence." *Sandoval,* 113 Idaho at 189, 742 P.2d at 995.

On this appeal, IDOC contends that a number of the findings of fact of the Personnel Commission's hearing officer are not supported by substantial evidence and also complains that some of the hearing officer's findings are irrelevant. In general, IDOC contends that the evidence demonstrates that Anderson violated IDOC policies by conducting an improper investigation of the sexual assault allegation, by failing to report that allegation to higher authority, and by failing to cooperate with IDLE investigators.

■ As an initial matter, we note that IDOC's attacks on the hearing officer's findings ignores the proper focus of appellate review, which requires this Court to consider the findings of the Personnel Commission, not those of the hearing officer. I.C. § 67–5316(8); *Hunnicutt,* 110 Idaho at 259, 715 P.2d at 929; *Sandoval, supra.* However, because the Personnel Commission findings are substantially similar to those of the hearing officer, we will address the bulk of IDOC's arguments.[2] In doing so we will direct our attention to the corresponding findings of the Personnel Commission rather than the findings of the hearing officer.

## A. Improper Investigation

We first consider IDOC's attack on several of the Personnel Commission's findings which relate to its holding that IDOC did not meet its burden to prove that Anderson violated Department policy through the manner in which he investigated the inmate's complaint against Pribble and through his failure to report the inmate's complaint to his superiors.

■ First, IDOC criticizes the finding that, after the meeting at which the inmate retracted her complaint, Correctional Officer Weeks did not believe the inmate's allegations. According to IDOC, this finding is irrelevant. We disagree with IDOC's assessment of the relevancy of this information. It was IDOC's contention that Anderson violated policy by failing to report the incident and that he was supposed to report all assaults, even false ones, to Warden Arave. Anderson countered this assertion with evidence that, at IDOC the question whether to report such allegations was a judgment call, that reporting procedures within IDOC during the period in question were unclear, and that Warden Arave actively discouraged written reporting.[3] Anderson testified that he did not believe the inmate's allegations and viewed the incident closed after she had recanted. His conclusion is supported by Weeks' testimony that she also discounted the allegation. Thus, Weeks' testimony as to her disbelief of the inmate's allegations is relevant to whether Anderson should have reported the incident.

■ IDOC next challenges the finding that the method which Anderson used to

---

2. However, this Court will not address each one of the sixteen findings that IDOC challenges because a number of the asserted errors of the hearing officer were corrected by the Personnel Commission. For example, IDOC challenges the hearing officer's finding that Anderson was dismissed from his employment on August 9, 1996, instead of October 10, 1996, the true date of termination. The Personnel Commission corrected this error in its decision and ordered that back pay be paid Anderson from October 10. Thus, IDOC has already received the relief which it requests. Other alleged errors in the hearing officer's findings about which IDOC complains are trivial and irrelevant to the issues to be resolved in this case, such as the hearing officer's mistake as to the number of cellblocks that are contained in the RDU.

3. On appeal, IDOC does not direct this Court to any written policy in the record that clearly required Anderson to report the allegation after the inmate recanted.

investigate the inmate's complaint—calling a meeting at which both the inmate and Pribble were present—did not violate any established IDOC policies in effect at the time. IDOC argues that this finding is not supported by substantial and competent evidence because Anderson's investigation technique clearly violated IDOC Policy 201, the sexual harassment policy, which required that suspected sexual harassment be reported "through the most confidential and direct means possible" and that investigations should protect the privacy of the accused and the complainant. IDOC argues that this policy was violated by Pribble's presence in the same meeting with the inmate. The Commission found that although this meeting may not have been the best method for handling such a sensitive issue, it did not violate Policy 201, which was the only policy proffered by IDOC on this point.

The Commission's finding that IDOC did not meet its burden to prove a violation of the policy is supported by substantial evidence.[4] Once the inmate's allegation had been made, it could not be investigated without questioning both Pribble and the inmate. Policy 201 did not prohibit bringing the alleged victim and the accused together, and IDOC cites no specific way in which this meeting violated the confidentiality requirement or the inmate's privacy.

IDOC points to testimony by Warden Arave that IDOC personnel were trained that bringing together the accuser and the accused "was not a good way of doing business," that IDOC had "moved away from those kind of confrontations" and that "it was

current policy that sexual harassment investigators should not bring the accused and the victim together." However, IDOC points to no place in which such a policy existed in writing and, as to the alleged training, it was undisputed that Anderson had not received training in handling sexual harassment claims or investigating inmate complaints, and thus would have been uninformed of any such policy. Consequently, Anderson decided to use skills learned in his prior training for handling substance abuse, which involved confronting the party with the problem.

Given the lack of evidence in the record that Anderson violated a written policy or that he was trained about or aware of any unwritten policy to avoid confrontational meetings, we conclude that the evidence supports the Commission's finding that IDOC did not meet its burden to prove a violation of department policy in the manner by which Anderson conducted the investigation.

### B. Failure to Report Incident to Superiors

■ IDOC next challenges the finding that Anderson did not violate policy by failing to report the Pribble incident to Warden Arave. IDOC argues that it submitted substantial evidence to support its position that Anderson had a duty, and was aware of his duty, to report such incidents to Warden Arave.

IDOC's argument is misplaced and fails to address the standard of an appellate review which this Court must apply in reviewing

4. It is not readily apparent that Policy 201 even applies to inmate complaints. The policy states that "It is the policy of the Board of Correction that the unlawful sexual harassment of any employee or recipient of department services is strictly forbidden." IDOC claims that an inmate qualifies as a "recipient of department services," and therefore Policy 201 applies. However, the definition of "sexual harassment" contained in Policy 201 implies that the policy is intended to cover the employment relationship, not the inmate/guard relationship. That section provides:

1. Unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature constitutes sexual harassment when:

   A. Submission to such conduct is made either explicitly or implicity [sic] a term or condition of an individual's employment;

   B. Submission to or rejection of such conduct is used as the basis for employment decisions affecting such individuals;

   C. Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.

2. A person who is qualified for but denied an employment benefit because of another's submission to sexual harassment is also protected by this policy.

The acts committed by Pribble against the inmate do not fall within any of these definitions covered by Policy 201.

Personnel Commission's findings. We will overturn the Commission's findings only if they are not based on any substantial, competent evidence, I.C. § 67–5318(1), or if the Commission lacked a reasonable basis to disbelieve IDOC's evidence. *Sandoval, supra.* In this case, although IDOC presented evidence that Anderson had been instructed to report assaults to Warden Arave, and that Anderson violated this duty by failing to report an allegation that had been recanted, this evidence was controverted. Anderson testified that Warden Arave actively discouraged written reporting of incidents at the prison, and that complaints against guards were common and were not considered an unusual event. Anderson, Weeks and Sergeant Smith all concluded that the inmate had concocted the allegation, and Anderson testified that he therefore believed there was nothing but a false allegation to report. In a document that was placed in evidence, Director Spalding acknowledged that "Reporting procedures within the IMSI and the IDOC during the period in question appeared unclear. Not only procedures for reporting events, but also chain of command reporting authority for staff. . . ." This was substantial and competent evidence upon which the Personnel Commission could reasonably rely to disbelieve IDOC's position that Anderson had violated established IDOC policy by omitting to report the inmate's recanted allegation to Warden Arave.

### C. Anderson's Conduct During IDLE Investigation

IDOC next complains that the hearing officer made inadequate findings regarding Anderson's alleged misconduct during the IDLE investigation. IDOC points out that the hearing officer's findings devote only one paragraph to this subject, and IDOC argues that the hearing officer did not consider its evidence that Anderson was uncooperative in interviews and failed to turn over documents in his possession to IDLE investigators.

■ We must again observe that IDOC's argument is misdirected because it focuses on the findings of the hearing officer rather than the findings of the Personnel Commission. The Personnel Commission's findings on this subject were far more expansive than those of the hearing officer, occupying nearly three pages of the Personnel's Commission's decision. These findings include the following:

> [IDOC] did a thorough job at the hearing and in the subsequent briefing to tease out every inconsistency in Anderson's testimony, particularly with regard to the documents which he had in his possession. It was Anderson's *three* interviews and *two* polygraphs which provided much of the inconsistency on which [IDOC] based its conclusions that Anderson was uncooperative. The interviews occurred more than a year after the events in question. The polygraph examinations occurred nearly two years after the events in question. The transcript evidences much confusion, and little clarity. But lack of clarity, confusion, and fading memory do not amount to a lack of cooperation. The polygraph examiner testified that Anderson was being cooperative. The [IDLE] investigators disagreed, but admitted that many other [IDOC] staff . . . had been far less candid and forthcoming and had engaged in behavior that was more detrimental to the investigation.
>
> . . . At some time in the fall of 1994, Sgt. Smith gave Anderson a copy of Pribble's tracking file for safekeeping. Anderson testified that he took the file home and put it with his other documents and forgot about it. When the [IDLE] investigators asked for copies of documents during their investigation a year later, Anderson had [his secretary] provide copies of all the RDU documents. The documents he had at his home were (with the exception of the file Sgt. Smith gave him), duplicates of these RDU files which had already been turned over. Because they were duplicates, he did not mention their existence or offer to turn them over.
>
> Although [IDOC] argued strenuously to the contrary, Anderson's testimony regarding the discovery of Smith's file is consistent. On the evening before the first polygraph, while reviewing some of his documents at home, Anderson came across the Pribble tracking file Sgt. Smith had

given him. The file contained mostly training records, but did include one document which appeared to be a notation pertaining to the [sexual assault] incident. Anderson was understandably nervous about finding the documents, revealed their existence the next day during the pre-test interview with the polygraph examiner, and turned the documents over to the examiner at the time of the second exam.

... Anderson's failure to recall he had the Smith file and turn it over did not impede the investigation, and would have done nothing to further it.

Anderson participated in three interviews with [IDLE] investigators, answered fully all questions put to him by director Spalding, and voluntarily submitted to two polygraph examinations. Anderson's testimony contained inconsistencies, memory lapses, and was confusing at times, but [IDOC] failed to prove that it was intentionally evasive or that Anderson lied. Anderson instructed his secretary to turn over all documents to the [IDLE] investigators. As soon as he became aware that he had Sgt. Smith's copy of the Pribble tracking file, he turned that over, even though it contained nothing of import. Even the investigators who did not believe Anderson was entirely forthcoming agreed he was more cooperative than the majority of the principals in the Pribble incident.

These findings are amply supported by evidence in the record. Indeed, much of the supporting evidence is expressly identified within the findings.

IDOC's argument that it submitted substantial evidence that Anderson did not cooperate in the investigation is unavailing. As pointed out above, the pertinent inquiry for our review is not whether there is substantial evidence upon which the Personnel Commission *could have* found in favor of IDOC, but whether there is substantial evidence to support the findings that the Personnel Commission *did* make. The presence of conflicting evidence created issues of credibility and evidentiary weight to be resolved by the Personnel Commission. Those determinations will not be second guessed by this Court on

appeal. *See Hunnicutt,* 110 Idaho at 261, 715 P.2d at 931.

### D. Findings Relating to the Conduct of and Disciplinary Action Taken Against Other IDOC Employees

■ IDOC also challenges a number of the findings that discuss the conduct of other IDOC employees involved in the Pribble incident and its outgrowths, and the comparatively milder disciplinary action or lack of disciplinary action taken against those employees. According to IDOC, these facts are irrelevant, merely serve to bolster an allegedly inappropriate argument by Anderson that he was made the scapegoat for IDOC, and should have played no part in the Commission's decision.

We disagree. How IDOC treated other personnel whose behavior with respect to the Pribble incident was similar to Anderson's, or was more of an impediment to the investigation than Anderson's, is probative of whether Anderson's behavior actually constituted a violation of IDOC policy as IDOC alleges.

### E. Attorney Fees Awarded by Personnel Commission

■ As its final issue on review, IDOC urges this Court to reverse the Personnel Commission's award of attorney fees to Anderson. IDOC has not, however, identified the statutory authority under which the Personnel Commission made the award nor delineated the legal standards which govern an award of fees by the Personnel Commission. An issue raised by appeal will be deemed waived if the proponent provides no argument or authority supporting its position. *West v. Sonke,* 132 Idaho 133, 143, 968 P.2d 228, 238 (1998); *Estes v. Barry,* 132 Idaho 82, 87, 967 P.2d 284, 289 (1998); *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Therefore, we do not address IDOC's argument that the Personnel Commission erred in awarding attorney fees.

### F. Attorney Fees on Appeal

■ Both parties request that this Court grant their attorney fees incurred on this

appeal. Anderson claims fees under I.C. § 12–117, which authorizes an award of attorney fees against a "state agency" in an administrative or civil judicial proceeding if the court rules against the state agency and finds that the agency "acted without a reasonable basis in fact or law." I.C. § 12–117(1). Anderson's request for fees under this statute must be denied because § 12–117 does not authorize an award of fees against IDOC. Section 12–117(4)(b) provides that for purposes of that statute, "state agency" means any agency defined in I.C. § 67–5201. The latter statute, which is a part of the Idaho Administrative Procedures Act, specifies that "agency" means "each state board, commission, department or officer authorized by law to make rules or to determine contested cases, *but does not include ... the state board of correction.*" I.C. § 67–5201(2) (emphasis added). In *Needs v. Idaho State Dep't of Correction,* 115 Idaho 399, 766 P.2d 1280 (Ct.App.1988), we recognized that because the State Board of Correction exercises its constitutional and statutory authority through the instrumentality of the Department of Correction, *see* I.C. § 20–201(3), the provision excluding the *Board* of Correction from the application of I.C. § 12–117 also excludes the *Department* of Correction. *Id.* at 401, 766 P.2d at 1282. Consequently, we may not award attorney fees and costs against the Department of Correction under I.C. § 12–117. Anderson points to no other statutory basis for his request for attorney fees on appeal. Therefore, his request is denied.

IDOC's request for an award of attorney fees is denied both because IDOC is not the prevailing party and because it has provided neither argument nor authority in support of its request. *See West, supra; Estes, supra.*

### III.

### CONCLUSION

The appellate decision of the district court, affirming the Personnel Commission's decision, is affirmed. Costs, but not attorney fees, are awarded to respondent Anderson pursuant to Idaho Appellate Rule 40.

Chief Judge PERRY and Judge SCHWARTZMAN concur.