44 P.3d 1130

Timothy **WHITTIER, Plaintiff–Appellant,**

v.

**DEPARTMENT OF HEALTH AND WELFARE, State of Idaho, Defendant–Respondent.**

No. 26783.

Supreme Court of Idaho,
Boise, December 2001 Term.

March 5, 2002.

Rehearing Denied April 12, 2002.

Lynn, Scott, Hackney & Jackson, Boise, for appellant. John C. Lynn argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. Ronald D. Christian, Deputy Attorney General, argued.

TROUT, Chief Justice.

Timothy Whittier ("Whittier") was dismissed from his job as supervisor of the Health Resources Section of the Bureau of Vital Statistics in the Department of Health and Welfare. He appealed to the Idaho Personnel Commission, which affirmed the dismissal after an evidentiary hearing conducted before a hearing officer. The district court on review affirmed, and Whittier now appeals to this Court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Whittier was employed by the Idaho Department of Health and Welfare ("DHW") from August 15, 1995, until January 19, 1998. In June of 1997, he accepted a position as the Health Policy Section Supervisor, the position he held at the time of his dismissal. The responsibilities of this position included developing and coordinating community information referral services, consulting with service providers, promoting community collaboration with Department programs, as well as overseeing a telephone and information referral service for the health care needs of women and children called the "Idaho CareLine." Whittier continued to supervise the CareLine until Barbara Narbonne was hired in September of 1997 as the Community Resource Coordinator. At all times relevant to this case, Whittier's immediate supervisor was Bureau Chief Jane Smith ("Smith"), and the next level supervisor was Division Administrator Richard Schultz ("Schultz").

Two instances of misconduct are relevant to this appeal. First, in late 1996 or early 1997, the Director of the DHW instructed all departmental employees that answering machines used to cover the DHW's telephones should be disconnected and that employees should personally respond to the public's telephone calls. Whittier's secretary had an answering machine attached to her telephone, the type typically used in the home. After the Director issued her mandate to stop using such machines, Smith again directed Whittier to disconnect the answering machine attached to his secretary's telephone. Whittier did not comply. In late October or early November of 1997, Smith learned the answering machine was still in use when she called the telephone line and heard the answering machine. Smith left an angry message on the answering machine instructing Whittier and his staff to disconnect it. A telephone technician was contacted and the answering machine was disconnected that day.

Second, during a budget review meeting in October of 1997, Smith learned that no one was answering the Section's telephones. At that time, Whittier's Section had two telephone systems: their Section telephones and the CareLine telephones. Whittier was talking on the telephone with a subordinate from his department, when Smith gave him a direct order, in the presence of others, to instruct the subordinate to transfer the telephones from Whittier's section to the CareLine section so the telephones would be answered during the course of the meeting. Whittier did not carry out the instruction. Rather, Whittier simply hung up the telephone and looked at Smith without making any comment or explaining his reason for not doing so.

On December 15, 1997, Whittier was placed on administrative leave with pay pending an investigation of his actions relating to, among other things, negligence in the handling of some conference funds, the failure to disconnect the answering machine despite a direct order to do so, and the failure to transfer the Section telephone lines to the CareLine telephone lines so calls from the Section could be answered. On December 31, 1997, Whittier received a Notice of Contemplated Action and performance evaluation report for the period from May 23, 1997 to December 31, 1997, which had an overall rating of "unsatisfactory."

Whittier filed a written response and thereafter, with the benefit of counsel, responded informally. On January 19, 1998, Schultz terminated Whittier's employment. The notice of dismissal cited violations of IDAPA 28.01.01.190.01 (currently IDAPA 15.04.01.190.01), and incorporated the December 31, 1997, performance evaluation as setting forth the factual basis for the dismissal.

Whittier appealed the dismissal and the matter was assigned to a hearing officer, who after conducting an investigation, upheld the dismissal based on the determination that the DHW proved, by a preponderance of the evidence, four out of twenty-three of its factual allegations regarding negligence and insubordination. The four factual bases the hearing officer determined the DHW proved were: 1) insubordination for handing conference funds within the Department and using the staff after specifically being told not to do so; 2) negligence for failing to exercise internal controls or reasonable care in handing the conference funds; 3) insubordination for failing to unplug the Sections' answering machine after being told to do so; and 4) insubordination for failing to transfer the Section's telephones to a different location after being told explicitly to do so.

The Idaho Personnel Commission ("IPC" or "Commission") upheld Whittier's dismissal on two grounds: insubordination or refusal to perform duties in failing to disconnect a telephone answering machine and failing to forward telephone lines. The IPC disagreed with the hearing officer's findings on the issue of negligence in handling conference funds and therefore did not reach the issue of insubordination regarding the conference funds.

Whittier next appealed the IPC's decision to the district court pursuant to I.C. § 67–5318. The district judge determined that the findings of the IPC were supported by substantial evidence and the decision was supported, as a matter of law, by the findings of fact. Accordingly, the district judge affirmed the IPC's decision. Whittier now appeals to this Court.

## II.

### STANDARD OF REVIEW

In an evidentiary hearing before an IPC hearing officer, the agency bears the burden of proving, by a preponderance of the evidence, the justification for the disciplinary action. *Idaho Dep't of Correction v. Anderson,* 134 Idaho 680, 686, 8 P.3d 675, 681 (Ct.App.2000) (citations omitted). When a matter is subsequently appealed from the hearing officer's decision to the IPC, the Commission conducts a *de novo* review of the record and renders an independent decision on the facts. *Id.*

The review of an Idaho Personnel Commission decision is controlled by I.C. § 67–5318. *Fridenstine v. Idaho Dep't of Admin.,* 133 Idaho 188, 190, 983 P.2d 842, 844 (1999). Under Idaho Code § 67–5318, when an appeal is taken to the district court from a decision of the IPC, the Commission's decision may not be set aside unless the court determines: (1) That the findings of fact are not based on any substantial, competent evidence; (2) That the Commission has acted without jurisdiction or in excess of its powers; (3) That the findings of fact by the Commission do not as a matter of law support the decision. I.C. § 67–5318; *Id.* This same standard applies when this Court reviews the IPC's decision on further appeal. *Id.*

The question of whether an employee's behavior constitutes misconduct is a question of fact. *Sanchez v. Idaho Dep't of Correction,* 134 Idaho 523, 525, 5 P.3d 984, 986 (2000). Therefore, this Court may not set aside the Commission's decision if such findings are based on substantial and competent evidence. *Id.* This Court exercises free review over issues of law. *Id.*

## III.

### DISCUSSION

1. **The findings of fact upholding Whittier's termination of employment are based on substantial, competent evidence.**

The IPC upheld Whittier's termination based upon the grounds of insubordi-

nation regarding the two telephone issues (intentional disregard of directives to disconnect a telephone answering machine and intentional disregard of directives to transfer telephone lines).

In the unemployment benefits context, this Court has previously defined intentional insubordination as "a deliberate or willful refusal by an employee to obey a reasonable order or directive which an employer is authorized to give and entitled to have obeyed." *Folks v. Moscow School Dist. No. 281,* 129 Idaho 833, 837, 933 P.2d 642, 646 (1997); (quoting *Avery v. B & B Rental Toilets,* 97 Idaho 611, 613–14, 549 P.2d 270, 272–73 (1976)). Insubordination is also defined as a "willful or intentional disregard of the lawful and reasonable instructions of the employer." BLACK'S LAW DICTIONARY 801 (6th ed.1990).

*Answering Machine:*

The record fully supports the IPC's factual findings with regard to the charge of insubordination for failing to disconnect the answering machine.

The IPC concluded that Smith gave Whittier at least two direct orders to disconnect the answering machine connected to his secretary's telephone. Whittier did not do so, and offered no explanation to Smith at the time of the order. Whittier contends he was caught in a "Catch–22" with regard to Smith's directive to unplug the answering machine because he was faced with an opposing order not to unplug anything by "Ralph," an outside contractor hired to overhaul the telephone systems. Even if Whittier's contention is true, he failed to communicate this "Catch–22" to Smith at the times he was ordered to disconnect the machine.

Additionally, unplugging the answering machine had no bearing on the overall telephone system because the answering machine was a freestanding unit, only plugged into the actual telephone. In October, after Smith's second order to do so, the Section had no difficulty in immediately removing the machine. Even if it were to affect the telephone system, Whittier made no effort to and never requested permission from "Ralph the phone guy" to unplug the answering ma-

chine. This demonstrates an intentional disregard of Smith's instructions.

*Telephone Line Transfer:*

With respect to the insubordination charge regarding the telephone line transfer, Whittier contends that the request to transfer the Section telephone lines to the CareLine telephone lines was impossible because historically, the lines were kept separate, Whittier's staff did not know how to transfer the lines, and it was unnecessary because another employee was going back to the Section and could answer the Section telephones. The fact Whittier failed to offer this reasoning to Smith at the time shows an intentional disregard of Smith's reasonable order. Simply because his supervisor was not aware of the circumstances prohibiting him from carrying out the order should not preclude his actions from constituting insubordination. Whittier should have communicated to Smith the obstacles preventing him from performing her order.

Based on the foregoing, we hold the IPC's findings are based on substantial and competent evidence. Therefore, the decision to dismiss Whittier is affirmed.

**2. The findings of fact upholding Whittier's termination support, as a matter of law, the decision to terminate.**

Idaho Code § 67–5309 affords the IPC broad deference in creating rules regarding the discipline and termination of employees. Idaho Code § 67–5309 provides:

> The administrator of the division of human resources shall have the power and authority to adopt, amend, or rescind such rules as may be necessary for proper administration of this chapter. Such rules shall include:
>
> . . .
>
> (n) A rule for the disciplinary dismissal, demotion, suspension or other discipline of employees only for cause with reasons given in writing. Such rule shall provide that any of the following reasons shall be proper cause for the disciplinary dismissal, demotion or suspension of any employee in the state classified service:

. . .

2. Inefficiency, incompetency, or negligence in the performance of duties.

. . .

4. Refusal to accept a reasonable and proper assignment from an authorized supervisor.

5. Insubordination or conduct unbecoming a state employee or conduct detrimental to good order and discipline in the employee's department.

Pursuant to this statute, the IPC adopted IDAPA 15.04.01.190.01. (Formerly IDAPA 28.01.01.190.01). That regulation provides:

**Cause For Disciplinary Actions.** Disciplinary actions, including dismissal, suspension, demotion, or reduction in pay, may be taken against any employee in the state classified service for any of the following causes which occur during the employee's employment:

. . .

b. Inefficiency, incompetency, or negligence in performing duties.

. . .

d. Refusal to accept a reasonable and proper assignment from an authorized supervisor.

e. Insubordination or conduct unbecoming a state employee or conduct detrimental to good order and discipline in the department.

This regulation clearly provides that insubordination is sufficient grounds for termination. However, the degree of insubordination required is not specified. Whittier contends that proper cause for discipline should be "real, substantial and compelling," and that an unserious failure to explain or a trivial level of insubordination should not be sufficient as proper cause for termination purposes.

In support of this contention, Whittier cites *Folks v. Moscow Sch. Dist. No. 281*, 129 Idaho 833, 933 P.2d 642 (1997). *Folks* involved a teacher who was discharged for an argument that took place between her and the school principal, using a variety of profane language. The School District denied Folks unemployment compensation and she appealed to the Industrial Commission. The Industrial Commission ruled the School District had not met its burden of establishing that Folks was discharged for employment-related misconduct, finding the argument to be an incident of comparatively nonserious disrespect that did not rise to the level of misconduct disqualifying her from the receipt of employment benefits. The Court in *Folks* noted that although an employer's expectation that an employee will not engage in "protracted argument" with his employer is objectively reasonable, a "single incident of comparatively nonserious disrespect by complaining and arguing is not misconduct." *Id.* (citing *Avery v. B & B Rental Toilets*, 97 Idaho 611, 613–14, 549 P.2d 270, 272–73 (1976)).

However, the *Folks* case involves the denial of unemployment benefits, not the termination of employment itself. The rules pertinent to the eligibility of unemployment benefits are different from those applicable to the instant case. The statute relevant to unemployment benefits, I.C. § 72–1366(e), provides that an employee who has been discharged is eligible for unemployment benefits so long as his discharge was not for "misconduct in connection with his employment." "Misconduct in connection with employment," defined at IDAPA 09.01.30.275.01 (formerly IDAPA 09.01.30.331.01–.03), is: "1) A willful, intentional disregard of the employer's interest; 2) A deliberate violation of the employer's reasonable rules; or 3) A disregard of the standards of behavior which the employer has a right to expect of his or her employees." *Folks at* 837, 933 P.2d at 646.

The requirements of the two rules are slightly different. Nothing in IDAPA 15.04.01.190.01 requires more than a single incident of misconduct for dismissal. In fact, the plain meaning of IDAPA 15.04.01.190.01 provides an employee can be terminated for insubordination. On the other hand, IDAPA 09.01.30.275.01 states that an employee "discharged for misconduct" is ineligible for unemployment benefits compensation. According to *Folks* and IDAPA 09.01.30.275.01, insubordination in the unemployment context may or may not consist of

"misconduct in connection with [ ] employment," depending upon whether the insubordination at hand is found to fit within the definition of "discharged for misconduct." Thus, the requirement in *Folks* requiring more than a single incident of misconduct for the denial of benefits in the unemployment compensation context, is distinguishable from the dismissal requirements in IDAPA 15.04.01.190.01.

The DHW cites to two instances of insubordination by Whittier, both of which are based on substantial and competent evidence. Moreover, given the importance of the Section's responsibility to answer calls from members of the public, these are important, not trivial, incidents.

### 3. Whittier was not denied procedural due process.

Public employees in Idaho who have a property interest in continued employment may not be deprived of this property interest without due process of law. *Harkness v. City of Burley*, 110 Idaho 353, 356, 715 P.2d 1283, 1286 (1986); *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494, 501 (1985). "Classified" employees have a property interest in their continued employment. *Fridenstine v. Idaho Dep't of Admin.*, 133 Idaho 188, 190, 983 P.2d 842, 844 (1999) (citations omitted). Whittier, as Health Policy Section Supervisor, was a "classified" employee of the State of Idaho. *See generally Fridenstine* at 190, 983 P.2d at 844. Thus, Whittier may not be deprived of this property interest without due process of law.

Due process requires, at a minimum, notice of the contemplated action and the basis and evidence relied upon for the contemplated action, and an opportunity to respond. *Arnzen v. State of Idaho*, 123 Idaho 899, 904, 854 P.2d 242, 247 (1993); *Loudermill* at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. The first element of due process, notice, may be an oral or written notification of the charges against the employee and the basis and evidence supporting those charges. *Id.* Even though the DHW notified Whittier in writing of its intent to take disciplinary action against him, Whittier argues this is insufficient notice because the DHW's "shotgun approach" of listing 23 allegations of a violation of Rule 190 does not comply with the spirit of I.C. § 67–5–309(n), requiring notice to the employee of what specific actions support the cause for discipline. The fact that only four, then ultimately two of the charges were sustainable should not be sufficient to find he did not receive adequate notice of the reasons for discipline. The acts listed in the notice were sufficient to inform Whittier of the nature of the charges.

Whittier also argues he was only provided with documentation after the Notice of Contemplated Dismissal was issued, specifically 59 documents were not produced by DHW until after the Notice, and 79 documents were produced only two weeks before the scheduled hearing. This argument is essentially the same argument this Court rejected in *Fridenstine*, 133 Idaho 188, 983 P.2d 842 (1999). In *Fridenstine*, the employee argued he should have been given all evidence supporting the allegations before the meeting. This Court found no support for this position because due process does not require the proffer of all evidence, but rather notice of the evidence. In support of this, this Court relied on language from *Loudermill*:

> The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Fridenstine* at 191, 983 P.2d at 845 (quoting *Loudermill* at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506 ). The Notice of Contemplated Dismissal provided to Whittier contained a detailed account of the charges against him and the basis for those charges. This is sufficient to put him on notice of what he allegedly did wrong. Additionally, "[t]he purpose of a pre-termination hearing is not to conclusively establish the propriety of the dismissal. It should be an initial check against mistaken decisions—essentially, a de-

termination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Fridenstine* at 192, 983 P.2d at 846 (quoting *Loudermill* at 545–46, 105 S.Ct. at 1495, 84 L.Ed.2d at 506). Basically, something less than a full evidentiary hearing is sufficient prior to adverse administrative action. *Id.* Simply because Whittier did not have every piece of evidence he wanted in his possession at the time of his hearing does not mean he failed to have adequate notice. Thus, under the circumstances presented by this case, this Court finds that Whittier was provided sufficient notice of the allegations of misconduct and of the evidence against him to facilitate a meaningful response.

 The second element of due process, an opportunity to respond, is an opportunity by the employee, either in person or in writing, to present his or her reasons "why proposed action should not be taken...." *Arnzen* at 904, 854 P.2d at 247; *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. The opportunity to respond must take place before the administrative action occurs. Thus, Whittier must have been given an opportunity to respond to the charges against him before the State made the decision to terminate him from employment with the Department.

We find Whittier did have the opportunity to respond. He did so informally, then with the representation of counsel. Whittier was placed on administrative leave with pay, pending an investigation prior to the decision to terminate him.

Whittier argues he was denied a fair opportunity to respond because the DHW only was required to produce those documents that would be used against him, depriving him of other relevant documents or discovery that may have aided in his defense. However, there is no indication that Whittier ever requested any specific information that might have assisted in a defense. Whittier made no showing that further discovery would have assisted him in any way. The IPC found there was no showing that any discovery requested by Whittier would have been relevant to the issues upon which the IPC sustained the DHW's decision to terminate.

Additionally, discovery in IPC cases is governed by IDAPA 15.04.01.201. This rule references the Idaho Attorney General's Model Rule of Administrative Procedure 521. Rule 521 provides that discovery is discretionary. Rule 521 provides:

WHEN DISCOVERY AUTHORIZED.

Parties may agree between or among themselves to provide for discovery without reference to an agency's statutes, rules of procedure, or orders. *Otherwise no party before the agency is entitled to engage in discovery unless discovery is authorized before the agency, the party moves to compel discovery, and the agency issues an order directing that the discovery be answered.* The presiding officer shall provide a schedule for discovery in the order compelling discovery, but the order compelling and scheduling discovery need not conform to the timetables of the Idaho Rules of Civil Procedure. The agency or agency staff may conduct statutory inspection, examination, investigation, etc., at any time without filing a motion to compel discovery.

IDAPA Rule 01.11.01.521 (emphasis added). The IPC held the hearing officer did not abuse her discretion regarding discovery, and because there has been no showing otherwise, this Court affirms the hearing officer's decision relevant to discovery.

 Finally, Whittier claims his substantive due process rights were violated because the dismissal was arbitrary, capricious and pretextual. He argues the "shotgun approach" of the reasons for his dismissal is evidence of pretext, which can rarely be shown by direct evidence. While Whittier's assertion may be correct that pretext is difficult to prove by direct evidence, he offers no showing of any indirect evidence of pretext. Simply alleging pretext is not sufficient.

The DHW argues that insofar as *Pace v. Hymas,* 111 Idaho 581, 726 P.2d 693 (1986) implies that substantive due process rights protect public employment rights, it should be reversed. There is no reason for this Court to decide whether to overrule *Pace* on these grounds. As noted above, Whittier has

not even attempted to meet his burden of showing a substantive due process violation, and it is unnecessary for this Court to make a decision on whether substantive due process does or should protect public employment rights.

## IV.

## CONCLUSION

The Idaho Personnel Commission's findings of fact regarding Whittier's termination of employment, were properly based on substantial, competent evidence. This Court finds, as a matter of law, that under IDAPA 15.04.01.190.01, the evidence of insubordination in this case was sufficient grounds for termination. Finally, Whittier has not shown he was denied procedural or substantive due process; therefore, the decision of the IPC is affirmed.

Costs to respondent.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, concur.