69 P.3d 120

**Eugenia HORNE, Petitioner–Appellant,**

v.

**IDAHO STATE UNIVERSITY,
Respondent.**

**No. 28502.**

Supreme Court of Idaho,
Boise, March 2003 Term.

April 24, 2003.

Nick L. Nielson, Pocatello, for appellant.

Racine, Olson, Nye, Budge & Bailey Chartered, Pocatello, for respondent. John R. Goodell argued.

EISMANN, Justice.

Eugenia Horne (Ms. Horne) was dismissed from her employment as a senior accountant with Idaho State University (University). She appealed to the Idaho Personnel Commission, which affirmed her dismissal. She sought judicial review in the district court, which affirmed the order of the Personnel Commission. She now appeals to this Court, and we affirm the order of the Personnel Commission.

## I. FACTS AND PROCEDURAL HISTORY

Ms. Horne was employed by the University as a senior accountant from 1993 until she was terminated on March 2, 2000. During her first five years, Ms. Horne's supervisor gave her satisfactory annual performance evaluations, with suggestions for improvement. In June 1998, Steve Peterson became Ms. Horne's supervisor. On April 26, 1999, he prepared an annual performance evaluation for Ms. Horne covering the one-year period ending April 18, 1999. He gave Ms. Horne a satisfactory rating, but indicated that the quality of her work was unreliable and that she had difficulty meeting deadlines. He further noted that her oral communication skills were poor and that she was unwilling to discuss projects and to ask questions regarding her work. He planned to meet with her on a periodic basis to discuss assignment, completion dates, anticipated problems, and other issues. Ms. Horne became very upset with the performance evaluation and submitted a written response to it.

Mr. Peterson met with Ms. Horne on April 30, 1999. During that meeting, she became upset, slammed a pad of paper down on Mr. Peterson's desk, and abruptly left the meeting despite Mr. Peterson's directives to the contrary. Ms. Horne later contended that Mr. Peterson was intimidating during the meeting, putting his hands on the table and looming over her. She admitted becoming angry and walking out of the meeting, but offered as a justification that because she was supposed to receive a five-year employee certificate, was studying for her certified public accountant examination, and Mr. Peterson refused to reschedule the meeting. Because of her conduct at the meeting, Mr. Peterson sent Ms. Horne a letter dated May 3, 1999, in which he advised her that her refusal to accept a reasonable and proper assignment from an authorized supervisor and insubordination constituted conduct unbecoming a state employee, or conduct detrimental to good order and discipline in the department, and that such conduct was prohibited by the Faculty/Staff Handbook. Mr. Peterson resigned his position in June 1999, and was later replaced by Roger Egan.

In late June 1999, Ken Prolo became Vice President for Financial Services. He was also the Director of Human Resources until the summer of 2000. On August 11, 1999, Ms. Horne fell or passed out while going up a stairway at the University. She suffered injuries to her face and was transported to the hospital. Mr. Prolo accompanied her, and advised the medical staff of a previous incident in January 1999 when Ms. Horne fainted while at work. The treating physician, Dr. Woodhouse, reported Ms. Horne's condition to the Idaho Department of Transportation. It sent a notice to Ms. Horne informing her that for medical reasons her driving privileges were suspended for one year beginning on August 30, 1999. On that same date she went on indefinite medical leave because of her fall. Ms. Horne timely appealed the suspension of her driving privileges, and her appeal was heard by telephone conference on September 15, 1999. It was denied by written order issued the following day.

Infuriated by the suspension of her driving privileges, on September 15, 1999, Ms. Horne telephoned from her mother's house in Nampa, Idaho, to the Family Practice Residency Clinic on campus, where Dr. Woodhouse worked. During that telephone call, Ms. Horne stated, "You people are driving me crazy. I don't know when I'm going to hit the point where I take everybody out with me." At the conclusion of that call, Ms. Horne slammed down the telephone, breaking it. Clinic personnel reported the telephone call to campus security. It then contacted the Nampa Police Department, who then went to the home of Ms. Horne's mother to assure Ms. Horne's safety.

Mr. Prolo attempted to schedule a meeting with Ms. Horne in either Nampa or Boise to discuss her telephone call to the Clinic and to obtain her side of the story regarding the call. Ms. Horne refused to meet with him. As a result, Mr. Prolo sent Ms. Horne a letter dated September 17, 1999, notifying her that she was currently denied access to the University campus and the Clinic.

Ms. Horne returned to work on December 13, 1999. On January 24, 2000, she telephoned the Department of Transportation from her office at the University in an attempt to have her driving privileges reinstated. During that telephone call, she became very loud and angry. The anger and tone of her conversation frightened several people in other parts of the building. On January 31, 2000, Ms. Horne's supervisor Mr. Egan and Donna Hilliard, the Associate Director of Human Resources, met with Ms. Horne to discuss her anger during that telephone call. During that meeting, Mr. Egan told Ms. Horne that she had frightened other employees and he reminded her that the Faculty/Staff Handbook allowed for disciplinary action for insubordination, for conduct unbecoming a state employee, and for conduct detrimental to the good order and discipline of the Department. Mr. Egan also admonished her that this was her second warning and that further similar behavior would result in her dismissal.

On February 1, 2000, Mr. Prolo asked his secretary to schedule a meeting with Ms. Horne at his office in Boise to discuss her

angry outbursts and employees' concerns. When the secretary contacted Ms. Horne, she became angry and demanded to be told the purpose for the meeting. The secretary responded that she did not know. About ten minutes later, Ms. Horne angrily stormed into the Financial Services office, again demanding to know what the meeting was about and demanding to speak immediately with Mr. Prolo. Her conduct frightened Mr. Prolo's secretary. Ms. Horne then stormed out of the office and went to the Office of Human Resources and the President's office, where she also raised a commotion.

On February 2, 2000, Ms. Horne filed a grievance contending that she was being treated with bias and discrimination. On February 3, 2000, Mr. Prolo held a grievance meeting with Ms. Horne and Ms. Hilliard. Ms. Horne's father was also present. Ms. Horne expressed her feelings that the University had destroyed her driving record, her medical records, her credit rating, and her employment record.

On February 10, 2000, Mr. Prolo again met with Ms. Horne and Ms. Hilliard, with Ms. Horne's mother also attended the meeting. The meeting accomplished very little. Ms. Horne refused to answer direct questions about the incidents, but instead was threatening, raising her voice, slamming her hands on the table, and raising a book over her head. Those present could not calm Ms. Horne. She then met with Mr. Egan and Ms. Hilliard. She was still angry and upset, and that meeting lasted only a few minutes. Ms. Horne was shouting and slammed the door as she left. Mr. Egan recommended that Ms. Horne be dismissed with cause. She was then sent home on paid administrative leave pending further notice.

By letter dated February 11, 2000, Mr. Prolo notified Ms. Horne of the contemplated action that she be dismissed for insubordination, conduct unbecoming a state employee, and conduct detrimental to the good order and discipline of the Department. Horne submitted a written response. By letter dated March 2, 2000, the University president dismissed Ms. Horne from classified employment.

Ms. Horne timely appealed her dismissal to the Personnel Commission, and pursuant to Idaho Code § 67–5316(3) her appeal was assigned to a hearing officer, who held an evidentiary hearing on October 12, 2000. On January 9, 2001, the hearing officer issued written findings of fact and conclusions of law in which she found that the University had established, by a preponderance of the evidence, that Ms. Horne had engaged in several separate incidents of uncontrolled anger and threatening conduct directed towards a variety of individuals. The hearing officer held that such conduct constituted insubordination, conduct unbecoming a state employee, and conduct detrimental to good order and discipline in the department, justifying her termination.

Ms. Horne then filed a petition for review with the Personnel Commission pursuant to Idaho Code § 67–5316(8). On September 10, 2001, the Commission issued a decision and order affirming the hearing officer's determination that Ms. Horne was properly terminated. The Commission found that the hearing officer's findings of fact were supported by substantial, competent evidence. Ms. Horne timely filed a petition for judicial review, and on March 12, 2002, the district court issued a memorandum decision and order affirming her dismissal. She then timely filed this appeal.

## II.  ISSUES ON APPEAL

A.  Does this Court have jurisdiction to hear this appeal?

B.  Were the findings of fact based upon substantial, competent evidence?

C.  Is Idaho State University entitled to an award of attorney fees on appeal?

## III.  ANALYSIS

**A.  Does This Court Have Jurisdiction to Hear This Appeal?**

The University contends that this Court does not have jurisdiction to hear this appeal because Ms. Horne did not timely file her petition for judicial review with the district court. The filing of a petition for judicial review within the time permitted by statute is jurisdictional. *Grand Canyon Dories,*

*Inc. v. Idaho State Tax Comm'n*, 121 Idaho 515, 826 P.2d 476 (1992). Idaho Code § 67–5317(3) provides that a petition for judicial review of the decision of the Personnel Commission must be filed "within forty-two (42) days of the filing of such decision." In this case, the Commission issued its decision on September 10, 2001, and mailed it to the parties on September 17, 2001. Ms. Horne filed her petition for judicial review on October 29, 2001, forty-nine days after the Commission's decision was issued and forty-two days after it was mailed. There is nothing in the record indicating when the Commission's decision was filed-when it was placed in the official custody of the appropriate Commission personnel for preservation as a public record. There is no filing stamp on the document. Absent any showing that Ms. Horne's petition for judicial review was not filed timely, this Court has jurisdiction to hear this appeal.

**B. Were the Findings of Fact Based Upon Substantial, Competent Evidence?**

■ A classified employee may appeal a disciplinary dismissal, demotion, or suspension to the Idaho Personnel Commission. IDAHO CODE § 67–5316(1)(a) (2001). The appeal is initially assigned to a hearing officer, who conducts an evidentiary hearing and then issues a decision consisting of findings of fact, conclusions of law, and such orders as are necessary. IDAHO CODE § 67–5316(3) & (8) (2001). The agency has the burden of proving, by a preponderance of the evidence, the justification for the disciplinary action. *Whittier v. Department of Health and Welfare*, 137 Idaho 75, 44 P.3d 1130 (2002); IDAPA 15.04.01.201.06. A party dissatisfied with the hearing officer's decision may file with the Commission a petition for review that specifically cites the alleged errors of fact or law made by the hearing officer. IDAHO CODE § 67–5316(8) (2001).

If a petition for review is filed, the Commission reviews the record of the proceeding before the hearing officer, the transcript of the hearing, and any briefs submitted to the Commission. IDAHO CODE § 67–5317(1) (2001). The hearing before the Commission

on a petition for review is limited to oral arguments regarding issues of law and fact as may be found in the record established before the hearing officer and any post-hearing orders. IDAPA 15.04.01.202.03. The Commission may affirm, reverse or modify the decision of the hearing officer, it may remand the matter, or it may dismiss it for lack of jurisdiction. IDAHO CODE § 67–5317(2) (2001). Either party may appeal the decision of the Commission by filing a petition for review with the district court. IDAHO CODE § 67–5317(3) (2001). When an appeal is taken to the district court, it must affirm the Commission's decision unless: (1) The findings of fact are not based on any substantial, competent evidence; (2) The Commission acted without jurisdiction or in excess of its powers; or (3) The findings of fact by the Commission do not as a matter of law support the decision. IDAHO CODE § 67–5318 (2001). That same standard applies when this Court reviews the Commission's decision on further appeal. *Whittier v. Department of Health and Welfare*, 137 Idaho 75, 44 P.3d 1130 (2002).

■ The Commission found that there were at least four separate instances of misconduct by Ms. Horne. The applicable statute and regulation do not require more than a single incident of misconduct in order to have cause for dismissal. Idaho Code § 67–5309 (2001) requires the administrator of the division of human resources to adopt rules covering various specifically-defined issues, including the disciplinary dismissal, demotion, suspension or other discipline of employees for cause. IDAHO CODE § 67–5309(n) (2001). With respect to the rule covering the discipline of employees for cause, the statute provides: "Such rule shall provide that *any* of the following reasons shall be proper cause for the disciplinary dismissal, demotion or suspension of any employee in the state classified service." *Id.* (emphasis added). One of the seventeen listed reasons giving cause to discipline a classified employee is: "Insubordination or conduct unbecoming a state employee or conduct detrimental to good order and discipline in the employee's department." *Id.* The regulation adopted pursuant to the statute states: "Disciplinary actions, including dismissal, suspension, demotion, or

reduction in pay, may be taken against any employee in the state classified service for *any* of the following causes which occur during the employee's employment." IDAPA 15.04.01.190.01 (emphasis added). It then lists seventeen causes for disciplinary action that correspond to those listed in Idaho Code § 67–5309(n), including "[i]nsubordination or conduct unbecoming a state employee or conduct detrimental to good order and discipline in the department." IDAPA 15.04.01.190.01.e. Thus, we will uphold the Commission if there is substantial, competent evidence supporting a single incident of misconduct by Ms. Horne. *Whittier v. Department of Health and Welfare*, 137 Idaho 75, 44 P.3d 1130 (2002).

Ms. Horne argues that the incident on April 30, 1999, was irrelevant and that the Commission's reliance upon it indicates bias. On that date Ms. Horne met with Mr. Peterson, her supervisor, and during that meeting she became upset, slammed a pad of paper down on Mr. Peterson's desk, and abruptly left the meeting despite Mr. Peterson's directives to the contrary. She later contended that Mr. Peterson was intimidating during the meeting, putting his hands on the table and looming over her. She contends that this incident is irrelevant because the Commission minimized Mr. Peterson's alleged conduct. The hearing officer rejected Ms. Horne's contention that Mr. Peterson provoked her. The hearing officer saw the witnesses testify and had the authority to assess credibility and to weigh the evidence presented. She did not find Ms. Horne's allegations credible. The Commission held that credibility issues are within the province of the hearing officer and that it would not disregard those findings without a meaningful reason for doing so. It concluded, "Horne's disagreement does not change the fact that there is substantial and competent evidence supporting the University's dismissal of Horne." The hearing officer's failure to adopt Horne's version of the incident, and the Commission's refusal to reject the hearing officer's factual findings, does not show that the incident was irrelevant or that the Commission was biased.

Ms. Horne argues that her September 15, 1999 telephone threat to the medical clinic was not relevant because she was not at work when she made the telephone call and the threat was not made to a co-employee in her department. She contends that such incident could therefore not constitute insubordination or conduct detrimental to good order and discipline in the department. She does not argue that such conduct could not constitute conduct unbecoming a state employee. The medical clinic was a subagency of the University and was located on the University campus. Ms. Horne's statement "You people are driving me crazy. I don't know when I'm going to hit the point where I take everybody out with me" was actually and reasonably understood to be a threat of physical harm to herself and to clinic employees. Even though Ms. Horne was on medical leave when she made the threat and was not at her office, her conduct was sufficiently related to her employment to constitute a ground for dismissal as conduct unbecoming a state employee.

Ms. Horne contends that the Commission took a one-sided view of her angry telephone call to the Department of Transportation on January 24, 2000, because it failed to mention that when Mr. Egan and Ms. Hilliard met with her a week later to discuss that incident, Ms. Horne stated that she was sorry. Although the University certainly could have considered Ms. Horne's alleged apology when deciding whether to terminate her, her apology had no bearing upon whether there was substantial, competent evidence supporting the factual findings regarding Ms. Horne's conduct on January 24, 2000.

Finally, Ms. Horne contends that the Commission also took a one-sided view of her conduct on February 1, 2000, when she angrily stormed into Mr. Prolo's office demanding to see him immediately. She argues that the Commission failed to consider her explanation for her conduct, namely that she felt she had resolved the earlier issues with Mr. Egan and that she had a personality conflict with Mr. Prolo and did not believe he would be fair. Ms. Horne's alleged justifications for her behavior would not have excused her conduct. By letter from her attorney dated

706

February 24, 2000, Ms. Horne presented her explanations for her conduct to the University. Although the University could certainly have considered such explanations when deciding whether her conduct warranted termination, they were not relevant to the issue of whether her actions constituted misconduct. Therefore, it was not necessary for the Commission to address them.

■ Finally, while arguing that the district court erred in affirming the Commission's decision in light of the University's alleged hostile actions against Ms. Horne, she stated that she was denied procedural due process. She based that claim upon the fact that Mr. Prolo sent her the written notice that the department was contemplating terminating her employment and that the notice stated that any response must be made to him. She contends that because of her personality conflict with Mr. Prolo, the University should have given her the opportunity to seek solutions from a neutral party in connection with her problems with her supervisors. She did not raise this issue in her appeal to the district court. Therefore, we will not address it on this appeal. *Whitted v. Canyon County Bd. of Comm'rs*, 137 Idaho 118, 44 P.3d 1173 (2002) (issues not raised below but raised for the first time on appeal to this Court will not be considered or reviewed).

### C. Is Idaho State University Entitled to an Award of Attorney Fees on Appeal?

■ The University seeks an award of attorney fees under Idaho Code §§ 12–117(1) and 12–121. Section 12–117(1) provides:

Unless otherwise provided by statute, in any administrative or civil judicial proceeding involving as adverse parties a state agency, a city, a county or other taxing district and a person, the court shall award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

A "state agency" means "each state board, commission, department or officer authorized by law to make rules or to determine contested cases." IDAHO CODE § 12–117(4)(b) (Supp.

2002) & § 67–5201(2) (2001). Because the University is not a state agency as defined by the applicable statutes, it cannot be awarded attorney fees under Idaho Code § 12–117.

■ The University likewise cannot recover attorney fees under Idaho Code § 12–121, which provides:

In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees. The term "party" or "parties" is defined to include any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

Because this appeal from the decision of the Personnel Commission is not a civil action, § 12–121 does not apply to this action. *Lowery v. Board of County Comm'rs*, 117 Idaho 1079, 793 P.2d 1251 (1990).

### IV. CONCLUSION

We affirm the order of the Personnel Commission. We award costs on appeal, but not attorney fees, to the University.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS, and KIDWELL concur.